George L. BARRY, Plaintiff,

v.

Margaret M. HECKLER, Secretary,
Department of Health and Human
Services, Defendant.

No. C–83–6178 WHO.

United States District Court,
N.D. California.

Jan. 13, 1986.

See also, 620 F.Supp. 779.

Harvey P. Sackett, San Jose, Cal., for plaintiff.

Joseph P. Russoniello, U.S. Atty., N.D. Cal., and Judith A. Whetstine, Asst. U.S. Atty., San Francisco, Cal., for defendant.

## OPINION AND ORDER

ORRICK, District Judge.

The sole issue remaining to be decided in this supplemental security income ("SSI") case is whether plaintiff, who prevailed on the merits, is entitled to recover attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. For the reasons set forth below, the Court finds that plaintiff's counsel is entitled to an award of attorney's fees in the amount of $16,387.50 for his services in this lawsuit, plus costs of $251.50.

I

A

The Bellmon Review Program was installed by the Secretary of Health and Human Services ("Secretary") to implement

Congress' mandate to review, on the Secretary's own motion, decisions rendered by administrative law judges ("ALJs"). Pub.L. No. 96–265, § 304(g), 94 Stat. 441, 456 (1980) (the Bellmon Amendment). In passing the Bellmon Amendment, Congress intended to improve the quality of decision making, to redress the high rate at which ALJs were reversing decisions made at state levels, and to redress perceived imbalances between the reversal rates of the various ALJs. *Association of Administrative Law Judges, Inc. v. Heckler*, 594 F.Supp. 1132, 1134 (D.D.C.1984), *citing* H.R.Rep. No. 944, 96th Cong., 2d Sess. 57 (1980), *reprinted in* [1980] U.S. Code Cong. & Ad. News, 1392, 1405, and S.Rep.No. 408, 2d Sess. 53 (1980), *reprinted in* [1980] U.S. Code Cong. & Ad. News, 1277, 1331.

In implementing the Bellmon Review Program, the Secretary authorized the Office of Hearings and Appeals to target specific ALJs who had high rates of allowing disability benefits. (Memorandum from Louis B. Hayes, Associate Director of the Social Security Administration, Sept. 24, 1982.) Initially, an ALJ would be targeted for review if he or she had a 66⅔ percent or higher allowance rate. By April 1, 1983, the program was supplemented to allow targeting based on the rate at which the Appeals Council reversed the ALJ. Under both criteria, only ALJs with a high allowance rate formed the pool from which targeted ALJs were selected for review.

When an ALJ was selected for review, all of that judge's decisions were subject to Appeals Council scrutiny. Among other repercussions, the ALJs selected were advised that if, after further review, their performance did not improve, "other steps would be considered." Memorandum of Associate Director, *supra*.[1]

### B

Plaintiff, George L. Barry, was employed as a carpenter from 1958 until January 1981, when he suffered a heart attack. He returned to work in August 1981 but suffered chest pains and back pains that prevented him from performing sustained activity throughout the work day. He stopped working on December 28, 1981, and has not been gainfully employed since January 1982.

Plaintiff brought a claim for disability payments under 42 U.S.C. § 423(a)(1)(D). The ALJ granted plaintiff disability benefits, and determined that plaintiff had the residual capacity to perform "sedentary work" as defined by 20 C.F.R. § 404.1567. The Appeals Council, on its own motion and pursuant to the Bellmon Review Program, chose to review the ALJ's decision. On December 6, 1983, the Appeals Council reversed the ALJ and found that plaintiff was not entitled to disability benefits. Specifically, the Council found that plaintiff had the maximum sustained capacity for a full range of medium work activities.

Plaintiff then brought this action pursuant to § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Secretary that he did not qualify for disability insurance benefits under Title II of the Social Security Act. Both parties moved for summary judgment. The issue framed by the cross-motions for summary judgment was whether plaintiff was assured due process in the manner in which his application for SSI benefits was reviewed. The Court held that plaintiff was not assured due process, and on April 18, 1985, the Court reversed the Secretary granting summary judgment in favor of plaintiff.

On June 13, 1985, judgment in this action was entered, and on June 25, 1985, the Secretary filed a motion for clarification pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. On August 20, 1985, the Court's clarification order was filed, stating that remand to the Secretary was for the sole purpose of effectuating the payment of social security benefits.

---

1. The entire Bellmon Review Program was eliminated by Congress on June 22, 1984. However, plaintiff's case was heard prior to the Program's demise by an ALJ who was subject to the program.

On October 18, 1985, plaintiff filed this motion for an order awarding attorney's fees and costs under the EAJA. 28 U.S.C. § 2412. The Secretary opposed the motion on the grounds that it should be dismissed as untimely and, in any event, that her position was at all times substantially justified, thereby precluding an award under the EAJA.

## II

Under federal law, attorney's fees may be awarded against the United States only if such an award is authorized by statute. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616–17, 44 L.Ed.2d 141 (1975). The EAJA, 28 U.S.C. § 2412, authorizes payment of reasonable attorney's fees and costs when a party prevails in a civil action, other than tort, against the United States. 28 U.S.C. § 2412(d)(1)(A). Hence, the EAJA is applicable to judicial review actions brought under the Social Security Act. *Berman v. Schweiker,* 713 F.2d 1290, 1295 (7th Cir.1983).

An award of attorney's fees pursuant to the EAJA provides the incentive necessary to enable persons such as plaintiff to pursue benefits they legally deserve. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6 (1980), *reprinted in* [1980] U.S. Code Cong. & Ad. News 4953, 4984. Thus, fees and costs will be awarded unless the plaintiff fails to meet the statutory requirements of such an award or the government, which has the burden of proof on the issue, can show that its position throughout the litigation was substantially justified. 28 U.S.C. § 2412(d)(1)(A); *Wolverton v. Heckler,* 726 F.2d 580 (9th Cir.1984).

Among the statutory requirements for an award of attorney's fees under the EAJA is that the application for such an award must be made within thirty days of "final judgment" in the action. The Secretary argues that because judgment was entered in this action on June 13, 1985, it became a "final judgment" within the meaning of the EAJA when the sixty days to appeal from that judgment expired on August 12, 1985. *See* 28 U.S.C. § 2412(d)(2)(G) (as added by Public Law 99–80, § 2(c)(2), effective on enactment, August 5, 1985). Thus, plaintiff had thirty days from August 12, 1985, or until September 11, 1985, to file an application for fees and other expenses under the EAJA. Because plaintiff's motion was not filed until October 18, 1985, the Secretary argues that it must be dismissed as untimely within the specific pleading requirements of 28 U.S.C. § 2412(d)(1)(B).

Under the facts of the present case, the Secretary is simply incorrect. By virtue of her June 25, 1985, motion for clarification brought pursuant to Federal Rule of Civil Procedure 59(e), the Secretary caused that the judgment entered on June 13, 1985, not be deemed as the Court's "final judgment" until such time as a clarification was rendered.

The Secretary's motion for clarification in effect tolled the allotted time within which plaintiff would be permitted to seek an award of attorney's fees under the EAJA, as set forth in Federal Rule of Appellate Procedure 4(a)(4), which provides in pertinent part:

> If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: * * * (iii) under Rule 59 to alter or amend the judgment * * * the time for appeal for all parties shall run from the entry of the order * * * granting or denying * * * such motion.

Hence, the Secretary's motion for clarification, brought under Rule 59(e) for motions to alter or amend the judgment, set the time for commencement of the sixty-day period in which to appeal the judgment from the date said clarification was rendered. The clarification was not filed until August 20, 1985. Therefore, the judgment became final when the sixty days in which to appeal from that judgment expired on October 19, 1985. Plaintiff had thirty days from that date, or until November 18, 1985, in which to submit an application for attorney's fees under the EAJA. Because plain-

tiff's motion was filed on October 18, 1985, it need not be dismissed as untimely.

The Secretary also submits that her position in the underlying litigation here was substantially justified, thereby precluding an award of fees and costs under the EAJA. In assessing whether the government's position was substantially justified, the test to be applied is essentially one of reasonableness. *Timms v. United States,* 742 F.2d 489, 492 (9th Cir.1984); *Wolverton, supra.* If the government is able to show its case had a reasonable basis in law and in fact, then EAJA fees may not be awarded. *Hoang Ha v. Schweiker,* 707 F.2d 1104, 1106 (9th Cir.1983).

■ Given the facts of this case, the Secretary cannot show that her litigation position was reasonable. The question litigated here was not, as is usually the case upon judicial review of a final decision of the Secretary, whether the Secretary's finding was supported by substantial evidence. Here, the question was whether the practice of "targeting" specific ALJs who had high rates of allowing disability benefits impermissibly infringed plaintiff's due process right to receive a hearing before an unbiased judge. Thus, the Secretary's assertion that her position was substantially justified because the decision of the Appeals Council was supported by substantial evidence is not only immaterial, but is also a reflection of misplaced reliance on cases that were narrowly premised on whether or not there was substantial evidence to support the Appeals Council's decision to exercise own-motion review. *See, e.g., Taylor v. Heckler,* 765 F.2d 872 (9th Cir.1985).

In litigating the constitutional question, the Secretary took several wholly untenable positions. First, she argued that the Court could not hear plaintiff's constitutional claim because its jurisdiction is limited on review to an inquiry of whether the Appeals Council had substantial evidence to support its decision. The Court found this position to be in contravention of the jurisdictional statute found at 28 U.S.C. § 1331, as well as offensive to a strong line of authority allowing a district court to hear constitutional claims on review. *See, e.g., Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Singer v. Schweiker,* 694 F.2d 616 (9th Cir.1982).

Second, the Secretary argued that because plaintiff here was not in any way injured by the Bellmon Review Program, he lacked standing to bring the constitutional claim. The Court found this argument to be entirely without merit, and held that plaintiff was injured in a constitutional sense by virtue of the existence of the program that increased the likelihood that benefits would ultimately be denied.

Finally, the Secretary asserted that a due process analysis was irrelevant given that the Appeals Council's decision was supported by substantial evidence. Again, the Court found this argument entirely unpersuasive and void of any legal support. The Court's Order of April 18, 1985, treated the Secretary's position throughout as a hopeless attempt to justify a clearly unconstitutional practice. There is nothing in that Order to indicate that the Secretary had a reasonable basis in fact or in law with respect to any of her arguments in this litigation. Because the Secretary has not met her burden of showing that her position in the underlying litigation was substantially justified, an award of attorney's fees and costs under the EAJA is required.

Plaintiff seeks attorney's fees for 109.25 hours at $150 per hour for a total of $16,387.50, plus costs incurred in the amount of $251.50. The EAJA provides a district court with the authority to award reasonable attorney's fees not to exceed $75 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Plaintiff submits that the presence of special factors in this case justifies a higher award at an hourly rate of $150 per hour.

In *Underwood v. Pierce,* 761 F.2d 1342 (9th Cir.1985), the Ninth Circuit set forth the factors to be considered in determining the proper hourly amount to be awarded in

granting attorney's fees under the EAJA. These factors, originally articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1975), and referred to as the *Kerr* factors, include the following: (1) the novelty and difficulty of the question raised; (2) the skill required to perform the legal service properly; (3) the preclusion of other employment by the attorney by acceptance of the case; (4) the customary fee; (5) whether the fee is fixed or contingent; (6) time limitations imposed by the client or other circumstances; (7) the amount in controversy and the results obtained; (8) the experience, reputation, and ability of the attorney; (9) the undesirability of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases. *Id.* at 70. Of these factors, plaintiff relies primarily on Nos. (1), (2), more properly stated as (8), and (5).

Plaintiff submits that the illicit targeting of ALJs presented a novel and difficult question that justifies a higher fee. The Secretary admits that this question may be novel and slightly more complex than the question of whether there is substantial evidence to support the Secretary's findings, but suggests that it is not complex enough to justify a higher fee. The Court agrees with the Secretary. The question presented was a basic question of constitutional law for which there was already ample precedent at the time plaintiff litigated the issue.

Plaintiff also submits that because his attorney specializes in the area of social security disability matters, has successfully represented many claimants in these matters, has served as the chairman of the Santa Clara Bar Association Committee on Social Security Law, and is presently the California State Chairperson for the National Organization of Social Security Claimant Representatives, such experience and ability justifies a higher award. The Court is persuaded that these factors justify an increase in the hourly rate.

Finally, plaintiff points to the fact that this was a contingency matter and, thus,

counsel took a risk in the prospect of recovering no fee whatsoever. This, too, supports a slight increase in the hourly award.

Additionally and independent of the *Kerr* factors, plaintiff claims that the cost-of-living language contained in the EAJA justifies a higher hourly rate in the instant case. Plaintiff cites the Consumer Price Index for All Urban Consumers ("CPI–U"), which indicates that from October 1981, the date that the EAJA was enacted, to the present, the CPI–U increased upwards of thirteen percent. Thus, plaintiff argues that, if for no other reason, attorney's fees should be computed at $84.75 per hour. To the contrary, it would appear that Congress did not intend that the inflation rate since 1981 should automatically result in an increase of the statutory maximum of $75 per hour because, when the EAJA was reenacted this year with substantial modification (Public Law 99–80), Congress chose to leave unchanged the $75 per hour cap on EAJA awards. Moreover, any readjustment of the cost of living for EAJA purposes should be computed from August 5, 1985, the effective date of the reenactment of the $75 per hour cap, rather than from October 1981.

Also independent of the *Kerr* factors, plaintiff submits that the Secretary's bad faith throughout the underlying proceedings justifies an hourly rate of $150. Plaintiff argues that the Secretary has consciously and willfully disregarded the law in the manner in which she implemented the Bellmon Review Program. He asserts that because the Bellmon Amendment and Congress' intent show that ALJs were not to be targeted on a blanket basis, as was the case here, that the Secretary's nonacquiescence is *prima facie* evidence of her bad faith. Plaintiff submits that because the EAJA, 28 U.S.C. § 2412(b), does not set any limits on the hourly fee to be paid counsel when the government has acted in bad faith, counsel's fee can and should be paid at the rate of $150 per hour, independent of any reference to the special *Kerr* factors above.

Plaintiff is correct on the law. Indeed, the case of *Velazquez v. Heckler*, 610 F.Supp. 328 (S.D.N.Y.1984), a social security case dealing with a motion for attorney's fees and costs under the EAJA, has allowed plaintiff to recover at the market rate upon a finding of bad faith on the part of the Secretary. *Id.* at 331–32.

In response to the allegation of bad faith, the Secretary only states in conclusory fashion that plaintiff's allegations are unsubstantiated. Again, she reminds the Court that the Appeals Council's finding was supported by substantial evidence that is still immaterial to the subject motion and underlying litigation. The Court finds that the Secretary's denial of benefits claimed by plaintiff under the "targeting" program in violation of plaintiff's due process rights was a display of bad faith for which the statutory limit need not apply.

On the basis of counsel's expertise in these matters, the contingent nature of the award and, most significantly, the Secretary's bad faith in implementing and defending the "targeting" program, plaintiff is awarded attorney's fees at $150 per hour. Although plaintiff's request for compensation for 109.25 hours appears slightly exaggerated, the Secretary has not objected to this request. Accordingly,

IT IS HEREBY ORDERED that:

1. Plaintiff's motion for attorney's fees and costs is granted.

2. Plaintiff is awarded attorney's fees in the amount of $16,387.50 (109.25 hours at $150 per hour), plus costs of $251.50.