**George L. BARRY, Plaintiff-Appellee,**

v.

**Otis R. BOWEN, Defendant-Appellant.**

No. 86–1802.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 1987.

Decided Aug. 19, 1987.

Harvey P. Sackett, San Jose, Cal., for plaintiff-appellee.

John F. Daly, Washington, D.C., for defendant-appellant.

Before SCHROEDER, WIGGINS and THOMPSON, Circuit Judges.

SCHROEDER, Circuit Judge:

The government appeals an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, in a supplemental security income case.

In the underlying action, the claimant, George Barry, sought district court review after the Appeals Council reversed an Administrative Law Judge's decision allowing his claim. The Appeals Council had reviewed the matter on its own motion pursuant to the Secretary's program of reviewing the decisions of certain Administrative Law Judges. In the district court, plaintiff Barry contended that the review program violated his due process rights.

The district court held in Barry's favor, *Barry v. Heckler*, 620 F.Supp. 779 (N.D. Cal.1985), and the Secretary did not appeal.

Barry then requested attorney's fees under the EAJA. The district court found, in *Barry v. Heckler*, 638 F.Supp. 444 (N.D. Cal.1986), that the Secretary's position had not been substantially justified and awarded fees in the amount of $150 per hour, twice the standard $75 rate provided for in the statute. The government appeals this decision. We hold that the award of attorney's fees was proper but reduce the amount to $75 per hour.

I

BACKGROUND

In 1980, Congress passed the Social Security Disability Amendments of 1980, including the provision known as the Bellmon Amendment. The amendment provided that:

The Secretary of Health and Human Services shall implement a program of reviewing, on his own motion, decisions rendered by administrative law judges as a result of hearings under section 221(d) of the Social Security Act....

Social Security Disability Amendments of 1980, Pub.L. 96–265, § 304(g), 94 Stat. 441, 456 (1980) (codified at 42 U.S.C. § 421 (1982)).

Following enactment of the Bellmon Amendment, the Social Security Administration ("SSA") put into effect in October 1981 the "Bellmon Review Program." The SSA described the contours of the program as follows:

[I]n accordance with the statutory mandate, [the Office of Hearings and Appeals] will conduct a comprehensive, ongoing program under which a prescribed percentage of administrative law judge decisions involving the issue of disability, particularly those allowing previously denied claims for disability benefits, will be evaluated prior to their effectuation, even though there is no request for review. When appropriate, the decision will be referred for possible review by the Appeals Council.

SSR 82–13 (1982).

This program was to be implemented, as stated in the Bellmon Amendment, by the

Secretary's use of "own motion" review. *See* Pub.L. No. 96–265, § 304(g), 94 Stat. 441, 456 (1980). The SSA announced that four categories of cases would be considered for possible own motion review:

(1) A national random sample of cases;

(2) allowance decisions of new ALJs;

(3) decisions referred by the SSA's Office of Disability Operations; and

(4) decisions of particular ALJs.

*See AALJ v. Heckler,* 594 F.Supp. 1132, 1134 (D.D.C.1984). Barry's underlying case concerned only the fourth category and questioned the validity of a policy in which the SSA targeted ALJs with high allowance rates.

When Bellmon Review was initiated, the SSA targeted for review those ALJs having an allowance rate of 66⅔% or higher. *Barry v. Heckler,* 620 F.Supp. at 781. By April 1983, the Bellmon Review Program had been expanded to target ALJs not only on the basis of their allowance rate but also on the basis of their Appeals Council reversal rate. The ALJ who heard Barry's case had been targeted for own motion review. *Id.* at 781. When the ALJ granted Barry's claim, the decision was reviewed by the Appeals Council. The Appeals Council reversed, concluding that Barry was not entitled to disability benefits.

Barry sought review of this decision in the district court, claiming that the Review Program's targeting of certain ALJs had denied him due process. In defending against Barry's due process claim, the Secretary took essentially three positions: (1) that the district court could not hear plaintiff's constitutional claim because its jurisdiction is limited to an inquiry into whether the Appeals Council decision was supported by substantial evidence, (2) that a due process analysis was irrelevant so long as the Appeals Council decision was supported by substantial evidence, and (3) that Barry lacked standing because he had won his case before the ALJ.

The district court rejected all of these arguments and found in Barry's favor in a carefully reasoned opinion. *See Barry,* 620 F.Supp. 779. The district court noted that Bellmon Review "put pressure on se-lected ALJs to reduce their precentage of benefit allowances, thereby denying claimants of their right to an impartial ALJ" and, in addition, sent a message that "impermissibly affected the Appeals Council." *Id.* at 782–83.

Barry then petitioned for attorney's fees under the EAJA, claiming that the government's position lacked substantial justification. The district court agreed and awarded fees in the amount of $150 per hour, finding that the presence of special factors justified an award in excess of the $75 per hour limit that the statute says is to be followed "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii).

The Secretary now raises three issues on appeal: (1) that Barry's petition for fees was not timely, (2) that the Secretary's position was substantially justified, and (3) that even if the Secretary's position lacked substantial justification, the district court erred in awarding attorney's fees in excess of $75 per hour. We reject the first two contentions but agree with the third.

## II

### TIMELINESS

Under section 2412(d)(1)(B) of the EAJA, a petition for attorney's fees in an action against the government must be filed "within thirty days of final judgment in the action." The judgment is final when it is no longer appealable, 28 U.S.C. § 2412(d)(2)(G), and this occurs when the government's sixty-day period in which to appeal has elapsed, *see* Fed.R.App.P. Rule 4(a)(1).

The question of whether Barry's petition for attorney's fees was timely filed therefore entails determining the date when the government's time for appeal began to run. The issue arises because the district court first entered an original judgment and then an amended judgment. The fee petition was timely if the entry of the amended

judgment, rather than the original judgment, started the time for appeal.

The government argues that its 60 days in which to appeal began to run on June 13, 1985, when the original judgment was entered, and that the petition for attorney's fees filed October 18, 1985 was thus untimely. Barry contends that we should compute the time for appeal from the date that the court, responding to a government post-judgment motion for clarification, entered an amended judgment. That occurred on August 20, 1985.

The procedural chronology requires closer scrutiny. On June 13, 1985, the court entered an order granting Barry's motion for summary judgment and denying the Secretary's motion for summary judgment. The order concluded: "The determination of the Secretary is reversed and remanded."

On Monday, June 25, 1985, the Secretary filed a "Motion for Clarification," which purported to be under both Rule 59(e) and Rule 60(b). The motion sought clarification of the court's order "in regard to whether benefits are to be awarded at this time or whether additional administrative proceedings are to be conducted."

▮▮▮ Motions under Rule 60(b) do not toll the time for appeal, but timely motions under 59(e) do. See Fed.R.App.P. 4(a)(4); 6A J. Moore, *Federal Practice and Procedure* ¶ 59.12[1]. The motion in this case was for the type of relief contemplated by Rule 59(e) rather than Rule 60(b).[1] It was, however, filed one day after the expiration of the ten-day period in which a party may bring a Rule 59(e) motion. Ironically, the Secretary's motion would have been timely under amendments that went into effect later in the year to exclude intermediate Saturdays, Sundays, and legal holidays from the computation of time periods of less than 11 days. See Fed.R.Civ.P. 6(a) (as amended 1985).[2]

An untimely Rule 59(e) motion ordinarily would not affect the running of the time for appeal, and that time would have expired on August 12. Computing the time for the filing of the petition for attorney's fees from the June 13 order, Barry would have had to file the request by September 11.

On August 20, however, the court modified the judgment in the case pursuant to the government's motion. The court entered an order which stated: "For the sake of clarification, IT IS HEREBY ORDERED

1. A motion under Rule 60(b) is proper to relieve a party from a judgment or order in the following cases:

> (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). Relief under exception (6) is available only upon a showing of "extraordinary circumstances." *McConnell v. MEBA Medical and Benefits Plan,* 759 F.2d 1401, 1407 (9th Cir.1985). The government's motion here fell into none of these categories and thus did not seek relief from judgment such as is contemplated under Rule 60(b).

A motion under Rule 59(e) is "[a] motion to alter or amend the judgment." Fed.R.Civ.P.

59(e). Although the precise contours of this relief have never been authoritatively defined, a motion seeking minor alterations in the judgment is properly one under Rule 59(e). *See Western Industries, Inc. v. Newcor Canada, Ltd.,* 709 F.2d 16 (7th Cir.1983) (set-off of counterclaim); *Cosgrove v. Smith,* 697 F.2d 1125, 1127–28 (D.C.Cir.1983) (clarification of court's ruling on a claim not mentioned in the judgment); *First National Bank in Greenwich v. National Airlines, Inc.,* 167 F.Supp. 167 (S.D.N.Y.1958) (addition of the words "with costs to the defendants"). This type of correction was the aim and effect of the government's "Motion for Clarification."

The motion was not one to correct a "clerical error" under Rule 60(a).

2. Under Rule 6(a) as it existed at the time, when the tenth day fell on a weekend or holiday, the time period was extended to the next business day. *See, e.g., Bailey v. Sharp,* 782 F.2d 1366, 1367–68 (7th Cir.1986). Ten days after the court's original order was June 23, 1985, a Sunday. Thus the Secretary had until Monday, June 24, to file the motion. Her filing on Tuesday, June 25, was therefore one day late.

that the case is remanded to the Secretary for the limited purpose of effectuating the payment of Social Security disability insurance benefits to the plaintiff." By its entry of the order, the district court indicated that it did not regard the judgment entered in June as the appropriate final disposition of the case.

The government argues, however, that assuming its motion was for relief under Rule 59(e), it was without effect because it was untimely and did not toll the time for appeal. The general rule is that only a timely Rule 59(e) motion tolls the time for appeal. *See, e.g., Whittaker v. Whittaker Corp.*, 639 F.2d 516, 520 (9th Cir.), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981). A district judge has no power to extend the 10–day time period. *See* Fed.R.Civ.P. 6(b); *Scola v. Boat Frances, R., Inc.*, 618 F.2d 147, 154 (1st Cir. 1980); 6A J. Moore, *Federal Practice and Procedure* ¶ 59.09[3], at 59–237 to 59–238 (1986). The government argues that the untimely Rule 59(e) motion did not toll the time for appeal, and that therefore petition for fees was also untimely.

The difficulty with the government's argument is that the district court, viewing the motion as an appropriate Rule 59 motion, *see Barry*, 639 F.Supp. at 445, entered an amended judgment. The amendment was in accord with the government's request for an amendment specifying the appropriate disposition of the case. The plaintiff quite reasonably viewed that judgment as the one from which the appeal time should run. He had no reason to believe that either the government or the court would think that any appeal should be taken from the original incomplete judgment.

■ Because of the unfairness of dismissing appeals based upon such reasonable reliance, the courts have recognized a narrow exception to the ordinarily rigid jurisdictional requirements for appeals. Where the district court itself suggests that the time for appeal has been extended or tolled, and a party acts in reasonable reliance upon that suggestion, jurisdictional limits on the time for appeal are eased under the "unique circumstances" doctrine. *See Wolfsohn v. Hankin*, 376 U.S. 203, 84 S.Ct. 699, 11 L.Ed.2d 636 (1964) (per curiam); *Thompson v. INS*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (per curiam); *United Artists Corp. & L.P.A.A. v. La Cage Aux Folles, Inc.*, 771 F.2d 1265, 1268–70 (9th Cir.1985). It was not necessary that the district court specifically state that it was treating the motion as one under Rule 59(e), which would toll the time for appeal, if by its actions it gave the parties good reason to believe that it was treating it as such. *See St. Marys Hospital Medical Center v. Heckler*, 753 F.2d 1362, 1366 (7th Cir.), *cert. denied*, 472 U.S. 1028, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985); *Webb v. Department of Health and Human Services*, 696 F.2d 101, 106 (D.C.Cir. 1982); *Lieberman v. Gulf Oil Corp.*, 315 F.2d 403 (2d Cir.), *cert. denied*, 375 U.S. 823, 84 S.Ct. 62, 11 L.Ed.2d 56 (1963).

■ In fashioning this narrow exception, courts have deemed it important for establishing reasonable reliance that the period for timely filing had not elapsed at the time of the district court's action. *See United Artists*, 771 F.2d at 1269; *Willis v. Newsome*, 747 F.2d 605, 606 (11th Cir.1984), *cert. denied*, —— U.S. ——, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986); *St. Marys Hospital*, 753 F.2d at 1365–66. In this case, when the court entered the amended judgment, the time for filing a fee petition after the original judgment was still running. Barry could have filed his petition for attorney's fees within the jurisdictional time period had he not reasonably relied on the district court's entry of an amended judgment pursuant to the government's motion for clarification under Rule 59(e). Moreover, the government has never disclaimed the benefits of the district court's modification.

Accordingly, the final judgment should be regarded as the amended judgment filed on August 20. Barry was reasonable in assuming that the government's time for appeal from that judgment ran from August 20 rather than from June 13; we will therefore consider the petition for fees timely.

## III

## THE APPROPRIATENESS OF AWARDING FEES: "SUBSTANTIAL JUSTIFICATION"

Under § 2412(d)(1)(A) of the EAJA, a district court is required to award attorney's fees to a successful plaintiff in an action brought against the United States unless the government's position was substantially justified. "The test of whether or not a Government action is substantially justified is essentially one of reasonableness." H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4989; *see also Foster v. Tourtellotte*, 704 F.2d 1109, 1112 (9th Cir. 1983). A position is substantially justified if it has a reasonable basis in both law and fact. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News at 4989. *See also League of Women Voters of California v. FCC*, 798 F.2d 1255 (9th Cir.1986); *Underwood v. Pierce*, 761 F.2d 1342, 1346 (9th Cir.1985), *modified*, 802 F.2d 1107 (9th Cir.1986), *cert. granted,* — U.S. —, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987). The burden is on the government to prove substantial justification. H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10–11, *reprinted in* 1980 U.S.Code Cong. & Ad.News at 4989; *Timms v. United States*, 742 F.2d 489, 492 (9th Cir.1984). We review for abuse of discretion the district court's determination of lack of substantial justification. *Underwood*, 761 F.2d at 1346; *United States v. First National Bank of Circle*, 732 F.2d 1444, 1446 (9th Cir.1984). In evaluating the government's position to determine whether it was substantially justified, we look to the record of both the underlying government conduct at issue and the totality of circumstances present before and during litigation. *See* 28 U.S.C. § 2412(d)(1)(B) (as amended by Pub.L. No. 99–80, § 2(b) (1985)); *League of Women Voters*, 798 F.2d at 1258; *Underwood*, 761 F.2d at 1345; *Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir.1984).

We turn first to the underlying government action in targeting the decisions of certain ALJs. As the district court held, Bellmon Review placed pressure first on ALJs to deny benefits and then, if the applicant was nevertheless successful, insinuated that the Appeals Council should reverse. *See Barry*, 620 F.Supp. at 782–83. It thus impaired the impartiality of the decisionmakers.

 Administrative decisionmakers do not bear all the badges of independence that characterize an Article III judge, but they are held to the same standard of impartial decisionmaking. *See Schweiker v. McClure*, 456 U.S. 188, 195, 102 S.Ct. 1665, 1670, 72 L.Ed.2d 1 (1982); *Hummel v. Heckler*, 736 F.2d 91, 95 (3d Cir.1984); *Stieberger v. Heckler*, 615 F.Supp. 1315, 1386–87 (S.D.N.Y.1985), *injunction on another issue vacated*, 801 F.2d 29 (2d Cir. 1986). Thus a program or policy that creates systemic, structural bias plainly falls outside the range of appropriate own motion review. *See, e.g., AALJ*, 594 F.Supp. at 1141–43. Bellmon Review was such a program. Indeed, every court that has addressed the issue has concluded that the program did have this pernicious effect. *See Salling v. Bowen*, 641 F.Supp. 1046, 1056 (W.D.Va.1986) ("If there ever was a chilling of judicial independence, this is it. This is like threatening a lawyer with disbarment if he takes a case of a controversial nature. This is the same as saying that every law judge in the country should be deciding a certain percentage of cases against the claimant."); *W.C. v. Heckler*, 629 F.Supp. 791, 799–800 & n. 15 (W.D. Wash.1985) ("To designate high allowance ALJs for ongoing review of their allowance decisions inexorably tends to discourage these ALJs from allowing benefits in close cases."), *aff'd*, 807 F.2d 1502, 1505 (9th Cir.1987); *AALJ*, 594 F.Supp. at 1141–43 (the SSA's "unremitting focus on allowance rates in the individual ALJ portion of the Bellmon Review Program created an untenable atmosphere of tension and unfairness which violated the spirit of the APA, if no specific provision thereof").

Due process infirmities are not the only problems the government has faced with this program. Subsequent to the ruling below, this circuit held that the Bellmon

Review Program was unlawfully adopted without the notice and comment rulemaking required by the Administrative Procedures Act, 5 U.S.C. §§ 551(4), 553(b) & (c) (1982). *See W.C. v. Bowen*, 807 F.2d 1502 (9th Cir.1987), *modified*, 819 F.2d 237 (9th Cir.1987). The underlying action that the government sought to defend in this case had serious legal defects.

■ In evaluating the justification of the government's position for purposes of awarding attorney's fees under the EAJA, we look not only to the underlying governmental action being defended in the litigation, but also to the positions taken by the government in the litigation itself. *See* 28 U.S.C. § 2412(d)(1)(B) (1985); *League of Women Voters*, 798 F.2d at 1258; *Underwood*, 761 F.2d at 1345; *Rawlings*, 725 F.2d at 1196. In this case, the government litigating positions also lacked merit. We examine each of the government's three arguments in turn.

■ First, the government argued that the district court could not hear Barry's constitutional claim because its jurisdiction is limited to an inquiry into whether the Appeals Council decision was supported by substantial evidence. It is well established, however, that a district court may review constitutional claims arising out of agency action. *See, e.g., Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Singer v. Schweiker*, 694 F.2d 616 (9th Cir.1982).

■ Second, the government argued that even if the district court could hear Barry's constitutional claim, a due process analysis was irrelevant so long as the Appeals Council had substantial evidence to support its decision. This is plainly false. The due process clause of the Fifth Amendment entitles the plaintiff to fair and impartial adjudication. *See Schweiker v. McClure*, 456 U.S. at 195, 102 S.Ct. at 1670; *Johnson v. Mississippi*, 403 U.S. 212, 216, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423 (1971) (per curiam). At the time the government defended this action, several courts had indicated their disapproval of Bellmon Review based on allowance rates. *See Hummel*, 736 F.2d at 95; *AALJ*, 594 F.Supp. 1132. No

court had given its sanction, and none has since.

■ Third, the government argued that Barry lacked standing because he won his case before the ALJ and therefore was not injured in any way. The Appeals Council, however, reversed the ALJ's favorable ruling so that Barry suffered an injury requiring district court action to redress, and all because the ALJ who originally decided Barry's case had been targeted for Bellmon Review. The district court was therefore correct that Bellmon Review increased the likelihood that Barry's benefits ultimately would be denied. *See Barry*, 620 F.Supp. at 782.

■ Because both the underlying government conduct and the government's litigating position rested on patently unreasonable readings of the law, the district court properly awarded fees under the EAJA.

## IV

## THE AMOUNT OF ATTORNEY'S FEES

Section 2412(d)(2)(A)(ii) of Title 28 provides that "attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." The district court ordered attorney's fees paid at an hourly rate of $150 on two grounds. First it said that the presence of "special factors" justified the higher award. *Barry v. Heckler*, 638 F.Supp. at 448. Second, it held that its finding of "bad faith" on the part of the Secretary brought the case within the ambit of 28 U.S.C. § 2412(b), which sets no dollar cap on recoverable attorney's fees. *Id.* at 449.

We review the district court's fee award under an abuse of discretion standard, while reviewing issues concerning the proper interpretation of the EAJA *de novo*. *LaDuke v. Nelson*, 762 F.2d 1318, 1333 (9th Cir.1985), *modified*, 796 F.2d 309 (9th Cir. 1986). In interpreting the statute, we must

bear in mind that waivers of federal sovereign immunity are strictly construed and must be explicitly and unequivocally expressed. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983); *Auke Bay Concerned Citizen's Advisory Council v. Marsh,* 779 F.2d 1391, 1392–93 (9th Cir.1986). In enacting a specific ceiling on hourly fees, Congress' goal was "to provide full market compensation for successful litigants while, at the same time, containing costs." *Action on Smoking and Health v. C.A.B.,* 724 F.2d 211, 217 (D.D.C.1984) [hereinafter "ASH"].

### A. *Special Factors*

■ In *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), we listed factors to be considered in determining reasonable attorney's fees. These factors are:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Although these factors were not originally designed for deciding when the $75 standard under the EAJA should be exceeded, we have held their application proper in that context. *See Underwood,* 761 F.2d at 1347. The Supreme Court, however, has granted certiorari in *Underwood* to review issues related to the nature of special factors that justify a departure from the EAJA's usual $75 per hour cap. *See,* —— U.S. ——, 107 S.Ct. 2177, 95 L.Ed.2d 834 (1987).

The district court's principal justification for the increase in the hourly rate was the lawyer's specialized experience and ability. The only other matter to which it referred was the contingency fee arrangement, which it said justified a "slight increase" in the award. 638 F.Supp. at 448.

■ The lawyer's expertise, however, standing alone and divorced from the time and skills requisite to perform the legal services properly, does not justify an increase over the $75 cap. Although the expertise of the attorney may be relevant in determining whether an award should exceed the $75 statutory cap, *Underwood,* 761 F.2d at 1347, the statute provides that attorney's fees in excess of $75 per hour may be awarded if "the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Other courts, while not applying a multi-factor analysis, have held in the EAJA context that an exception to the $75 per hour limitation is proper only where appropriately qualified legal representation is not available for $75 or less. *See Vibra-Tech Engineers, Inc. v. United States,* 787 F.2d 1416, 1420 (10th Cir.1986); *ASH,* 724 F.2d at 217, 219. This court in *International Woodworkers of America, AFL–CIO, Local 3–98 v. Donovan,* 792 F.2d 762, 766 (9th Cir.1986), stressed, in upholding a fee award in excess of $75 per hour, that plaintiff's counsel was the only attorney available who had both knowledge of the substantive area of law and expertise in federal litigation.

■ We conclude that in order to qualify for an adjustment on the basis of expertise, the plaintiff should be able to demonstrate that the expertise was necessary. This may be done, for example, by showing that sufficiently specialized counsel was unavailable for less than $75 an hour, or that less qualified counsel could not have done the job, or that less experienced counsel would have taken more time. Such a showing comports with the congressional intention to constrain litigants from hiring high-priced lawyers with the expectation

that the government will pick up the tab. *See ASH*, 724 F.2d at 219. The plaintiff in this case made no such showing. The district court therefore erred in basing an upward adjustment upon the lawyer's expertise in the absence of a showing that such expertise was necessary for the case.

■ The only other factor the district court relied on for the upward adjustment was the existence of a contingency fee arrangement. We have held that the existence of a contingency fee arrangement may justify an award in excess of $75 per hour where there is a considerable risk that the litigation will be unsuccessful. *See International Woodworkers of America*, 792 F.2d at 766; *LaDuke v. Nelson*, 762 F.2d at 1333; *Underwood*, 761 F.2d at 1347.[3] This was not such a case. The plaintiff has continually claimed with regard to the substantial justification issue that the government defended a clearly unmeritorious case. Relying partly upon the ruling in *AALJ*, which had been published by the time this case commenced, a lawyer could have concluded from the outset that the plaintiff's chances of success in the underlying litigation were fairly high. We decline to hold that the $75 per hour cap may be breached whenever there is a contingent fee arrangement with its concomitant risk of nonpayment. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, —— U.S. ——, —— —— nn. 11–12, 107 S.Ct. 3078, 3088–89 nn. 11–12, 97 L.Ed.2d 585 (1987); *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 841 n. 16 (9th Cir.1982).

## B. *Bad Faith*

The district court based its award of $150 per hour on a second, independent ground—that the Secretary's "bad faith" brought this claim for attorney's fees within 28 U.S.C. § 2412(b), which sets no limit on the hourly fee paid to successful counsel. *Barry*, 668 F.Supp. at 449.

■ "An award of attorney fees under the 'bad faith' exception 'is punitive, and the penalty can be imposed "only in exceptional cases and for dominating reasons of justice." '" *Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751, 756 (9th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 100, 93 L.Ed.2d 51 (1986) (*quoting United States v. Standard Oil Co.*, 603 F.2d 100, 103 (9th Cir.1979) (*quoting* 6 J. Moore, *Moore's Federal Practice* ¶ 54.77[2] (2d ed. 1972))). The burden is on the plaintiff to show the government's bad faith. *United States v. Ford*, 737 F.2d 1506, 1509–10 (9th Cir.1984). Bad faith may be found either in the actions that led to the litigation or in the conduct of that litigation. *Hall v. Cole*, 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973); *Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1298 (9th Cir.), *cert. denied*, 459 U.S. 990, 103 S.Ct. 346, 74 L.Ed.2d 386 (1982). An award of bad faith must be based on specific findings that are not clearly erroneous or on sufficient evidence appearing in the record. *See Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir.1985); *Dogherra*, 679 F.2d at 1298.

Not all cases in which the government lacks substantial justification under the EAJA are defended in bad faith within the meaning of 2412(b). In *Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 776 F.2d 1066, 1068–69 & n. 21 (D.C.Cir.1985), the court stated that the government's position lacked not only substantial justification but *all* justification, and that it was unsupported by legal authority. These conclusions notwithstanding, the court said there was no evidence of bad faith. Similarly, in *Schuenemeyer v. United States*, 776 F.2d 329, 333 (Fed.Cir.1985), the Federal Circuit found that the government's position in defending against an Air Force officer's pay claim was not substantially justified under § 2412(d), yet it refused to find bad

---

**3.** The D.C. Circuit also follows this view. *See ASH*, 724 F.2d at 218. The area of contingency fee adjustments is, however, a complicated one, *see Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1212 n. 4 (9th Cir.1986), *modified*, 808 F.2d 1373 (9th Cir.1987), and not all circuits are identically aligned. Thus the Second Circuit has held that the consideration of a contingency fee arrangement is always inappropriate. *See Aston v. Secretary of Health and Human Services*, 808 F.2d 9, 11 (2d Cir.1986).

faith under § 2412(b) because it deemed that the Government's conduct of the litigation, on the whole, was not "reprehensible." The court consequently abided by the $75 per hour ceiling on fee awards. *Id.* And in *United States v. 101.80 Acres of Land,* 716 F.2d 714, 718 n. 6 (9th Cir.1983), we held that even though the government was not substantially justified in defending against a claim for just compensation in a takings case, there was "no indication of any governmental bad faith or similar circumstances falling within the existing equitable exceptions to the American rule." If the standard in the two subsections were the same, the $75 per hour limitation in § 2412(d)(2)(A)(ii) would be meaningless because a higher award would always be available under § 2412(b).

That the bad faith standard must be higher than the substantial justification standard is borne out by cases interpreting the exception's meaning and aims. The bad faith exception predates the EAJA. Section 2412(b) codified the bad faith exception to the "American rule" against the award of attorney's fees and made that exception applicable in suits against the United States. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 9, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4987; *Lauritzen v. Lehman,* 736 F.2d 550, 554 (9th Cir.1984); *Spencer v. N.L.R.B.,* 712 F.2d 539, 546 (D.C.Cir.1983). An analysis of the bad faith exception under the EAJA therefore draws upon the well of cases decided in other contexts. *See Spencer,* 712 F.2d at 546.

The exception is a narrow one, *see United States v. Standard Oil Co. of California,* 603 F.2d 100, 103 (9th Cir.1979), and it is typically invoked in cases of vexatious, wanton, or oppressive conduct, *see, e.g., F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974); *Foster v. Tourtellotte,* 704 F.2d at 1111. One hallmark of bad faith is a disregard of the judicial process. *See In re Beverly Hills Bancorp,* 752 F.2d 1334, 1340 (9th Cir.1984); *see also Beaudry Motor Co.,* 780 F.2d at 756 (the bringing of a case barred by the statute of limitations); *Toombs v.*

*Leone,* 777 F.2d at 471–72 (deliberate failure to comply with local rules regarding exchange of exhibits); *International Union of Petroleum and Industrial Workers v. Western Industrial Maintenance, Inc.,* 707 F.2d 425, 428 (9th Cir.1983) (refusal to abide by arbitrator's award).

█ In the instant case, the district court based its finding of "bad faith" upon the government's unreasonable implementation and defense of the program, not upon any further showing of vexatious or oppressive conduct. In the absence of some showing beyond that which is required for the imposition of fees under section 2412(d), the award of fees for "bad faith" was error.

### CONCLUSION

We affirm the district court's finding that the government's position lacked substantial justification, but reverse its finding of bad faith. We also limit the award of attorney's fees to $75 per hour. The matter is remanded and the district court is instructed to award attorney's fees to the plaintiff in the amount of $8193.75 (109.25 hours at $75 per hour), plus costs of $251.50.