**Elisa CAZARES, Plaintiff–Appellee,**

v.

**James BARBER, et al., Defendants–Appellants.**

No. 90–16423.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1991.

Decided March 11, 1992.

E. Roy Hawkens, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.

John Harris, Papago Legal Services, Inc., Sells, Ariz., for plaintiff-appellee.

Before: FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.

WIGGINS, Circuit Judge:

The government appeals the district court's granting of attorneys' fees to plaintiff/appellee in excess of the statutory cap of $75 per hour under the Equal Access to Justice Act.[1] We affirm the grant on the basis of bad faith on the part of the government.

Under 28 U.S.C. section 2412(b), a court, in the absence of a prohibiting statute, may grant attorneys' fees to a prevailing party against the United States in a civil case as it would in any civil case.[2] This includes an award against a party acting in bad faith. The cases interpreting this section, as well as the plain language of the statute itself, indicate that this subsection is not subject to the fee cap in subsection (d)(2)(A).

A district court's finding regarding a party's bad faith is reviewed under the clearly erroneous standard. *Brown v. Sullivan*, 916 F.2d 492, 495 (9th Cir.1990) (in the context of a section 2412(b) review) (citing *Beaudry Motor Co. v. Abko Properties, Inc.*, 780 F.2d 751, 756 (9th Cir.1986), *cert. denied*, 479 U.S. 825, 107 S.Ct. 100, 93

---

1. 28 U.S.C. § 2412(d)(2)(A).

2. Section 2412(b) provides: "Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United ed States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."

L.Ed.2d 51 (1986)). According to *Brown*, fees granted under section 2412(b) are at a reasonable market rate. *Id.* at 495.

The district court considered the "totality of the circumstances, prelitigation and during trial." *Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir.1984). This included "the underlying agency actions and the government's litigation posture." *Id.* at 1195. It found that the school officials had an "arrogant and calloused attitude ... from the beginning." It perceived the conduct of the school officials after the district court issued its judgment on the merits as a "clear indication of their attitude" throughout. We conclude that the district court's finding of bad faith is not clearly erroneous.

The district court found that the sole reason for Cazares' denial of admission to the Honor Society was the fact that she was pregnant, unmarried and not living with her child's father. Then the district court issued a permanent injunction, ordering that the induction ceremony at the high school not take place without Cazares. In his Findings of Facts and Conclusions of Law, the judge stated that Cazares would suffer irreparable injury if she were excluded because of her pregnant, unmarried status.

The district court assumed that the school administration would hold the ceremony and include Cazares because it did not want to harm the other students who were to be inducted. In their earlier filings with the court, school officials had stated their desire to hold the ceremony without delay to benefit the selected students and to get off to a good start with the National Honor Society in its first year of affiliation.

After the injunction was issued, appellants decided to cancel the entire induction ceremony rather than include Cazares. They preferred to deny all selected students the honor rather than follow the district court's direction. Appellants claim that they canceled the ceremony in order to preserve their appeal. However, such an appeal would have been frivolous.[3] Seek-ing to preserve a frivolous appeal is itself frivolous.

Furthermore, the total amount in dispute is less than $5,000. It appears unreasonable that appellants would spend the money to send an attorney from Washington, D.C., to San Francisco to contest such a small figure in a case like this, which has its origins in government wrongdoing.

■ The district court's Memorandum of Decision contains what we believe was an inadvertent error. The court stated that the application for attorney's fees by plaintiff/appellee was pursuant to 28 U.S.C. section 2412(d). In truth, the application was pursuant to section 2412 in general. In the reply to defendant's response to the motion for attorney's fees, plaintiff/appellee specifically discusses both section 2412(b) and section 2412(d).

We believe the court's omission of section 2412(b) is inadvertent because its Memorandum specifically refers to defendant/appellant's bad faith:

Plaintiff's response to the defendant's opposition to the application for attorneys' fees very adequately sets forth the arrogant and calloused attitude taken by the defendants from the beginning.... Defendants' argument ... is frivolous and further proof of their bad faith.

Thus, the Memorandum is sufficient.

Appellants contend that even if the Memorandum was sufficient, it was issued too late by the district court. The district court judge did not explain in writing his granting of attorneys' fees until after the notice of appeal was filed. Appellants argue that he could not do so because once the appeal was filed, the district court no longer had jurisdiction.

■ However, the judge did not "make further findings or adjudications regarding the issues being appealed" as the appellants argue. Rather, he merely explained findings he had already made in granting the fees. In fact, the Ninth Circuit has said that a district court still has jurisdiction, even after appeal is filed but before the appeals court has ruled, to *grant* attor-

3. Appellants may have later realized this, as they stipulated to a dismissal of their appeal.

neys' fees. *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 956–57 (9th Cir.1983) (The "rule of exclusive appellate jurisdiction is a creature of judicial prudence, however, and is not absolute.") Thus, the district court certainly still has jurisdiction after an appeal is filed to explain its granting of attorneys' fees. As the *Masalosalo* court stated, such a policy prevents piecemeal appeals.

The judgment of the district court is AFFIRMED.

KOZINSKI, Circuit Judge, dissenting.

Under the so-called American rule, each litigant is responsible for its own attorney's fees. An exception to the rule applies when a party engages in bad faith litigation—that is, "vexatious, wanton, or oppressive conduct." *Barry v. Bowen*, 825 F.2d 1324, 1334 (9th Cir.1987).

1. My colleagues approve an award of attorney's fees against the United States for its bad faith. See 28 U.S.C. § 2412(b). The core of the majority's analysis is as follows:

> The district court considered the "totality of the circumstances, prelitigation and during trial." *Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir.1984). This included "the underlying agency actions and the government's litigation posture." *Id.* at 1195. It found that the school officials had an "arrogant and calloused attitude ... from the beginning."

Maj. op at 755. This passage is remarkable for how little it explains about what the United States did that was "vexatious, wanton, or oppressive," or why my colleagues believe that the United States litigated in bad faith. As we have repeatedly made clear, an award of fees for bad faith is justified "only in exceptional cases and for dominating reasons of justice." *Brown v. Sullivan*, 916 F.2d 492, 495 (9th Cir. 1990) (internal quotations omitted). Such an award "must be based on specific findings that are not clearly erroneous or on sufficient evidence appearing in the record." *Barry*, 825 F.2d at 1333; *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980) (fees may be awarded only after fair notice and opportunity for hearing on

record); *In re Yagman*, 796 F.2d 1165, 1185 (9th Cir.) (reversing sanctions in part because of failure of court to explain bases for award), *amended*, 803 F.2d 1085 (9th Cir.1986).

The majority opinion conflicts with the well-settled law in this area. While the district court did indeed utter the words "bad faith," it made *no* findings—much less any specific findings—about what conduct of the United States amounted to bad faith. True, the district court alluded to the government's "arrogant and calloused attitude from the beginning," but it did not explain what this supposed arrogance or callousness consisted of. Nor do my colleagues. I respectfully suggest that we may not affirm a bad faith attorney's fees award where the district court merely chants the proper incantation, with nothing in the record to back it up. I fear that the majority's casual approval of the sanctions in this case will be read as significantly loosening the standard for finding bad faith. While some have argued that fees should be awarded more often than the law presently allows, *see* President's Council on Competitiveness, *Agenda for Civil Justice Reform in America* 24–25 (1991), this should not be accomplished by judicial disfigurement of the concept of bad faith.

2. Equally troubling is the majority's reliance on the government's post-litigation conduct. The government was not ordered to hold an induction ceremony; it was ordered to include Cazares *if* it held an induction ceremony. It decided not to hold a ceremony at all. This possibility was raised in the government's opposition to plaintiff's motion for a preliminary injunction, yet the district court did not compel the holding of a ceremony, and plaintiff did not seek an amendment to the injunction once she learned that the government had canceled the ceremony. It is unusual to accuse a party of bad faith based on its post-litigation conduct. *See Barry*, 825 F.2d at 1333 ("Bad faith may be found either in the actions that led to the litigation or in the conduct of that litigation."). More so when the party has done exactly what the district court allows.

It doesn't matter, of course, why a party chooses one of two permissible ways of

complying with a district court's order, but the government's interest in preserving its appeal does suggest it didn't cancel the ceremony out of petty vindictiveness. My colleagues assert that the appeal would have been frivolous and "[s]eeking to preserve a frivolous appeal is itself frivolous," maj. op. at 755, but they offer no support for their premise. And with good reason: The question presented in the district court—whether a high school may exclude unmarried parents from its National Honor Society—does not answer itself. Much judicial ink has been spilled applying the equal protection and due process clauses to various fact patterns, and I am not at all sure the district court's application of these doctrines to the facts of this case was correct. And even if it was, the case is still light years away from the open-and-shut case of "government wrongdoing" the majority casually alludes to. *See* maj. op at 755.

My colleagues' oblique suggestion that the government may have conceded the frivolousness of its position by dismissing the merits appeal is neither accurate nor fair. *See id.* at 755 n. 3. The government engages in complex deliberations before taking an appeal so that it can consider all relevant factors—including the cost of litigation, the burden on the court and parties, and the effective mootness of the controversy. The government litigators were permitted—even required—to maintain the status quo until Civil Division officials could decide whether to make an appeal recommendation to the Solicitor General. The government should be thanked for saving us a difficult decision on the merits, not saddled with a concession it didn't make.

3. Finally, my colleagues are displeased that the government took an appeal on the attorney's fees issue when only $5000 is at stake. Maj. op. at 755. Because this issue was not briefed or argued, it is difficult to know why the government chose to pursue this appeal, but it hardly matters: We must consider whether the government acted in bad faith during the *merits* proceedings in the district court. Its decision to take an appeal on the attorney's fees question, like the manner it chose to comply with the

district court's order, is irrelevant to the question whether it acted in good faith in defending its substantive position in the district court.

\* \* \* \* \* \*

My colleagues obviously would have handled this case differently had they been representing the government, but that's hardly a basis for finding that the government litigated in bad faith. Judicial vexation should not be confused for vexatious litigation. I respectfully dissent.