**In re Hafadai Beach Hotel Extension**, Coastal Permit Decision No. SMS-90-X-151. Appeal No. 93-020 Civil Action No. 93-0056 Office of Coastal Resources Management Appeal No. 92-02 Opinion and Order October 6, 1993

---

[8] *See id.* §§ 480-82, 485.

[9] *Id.* § 482 cmt. a (emphasis added); *see also id.* § 478 cmt. a.

Argued and Submitted September 10, 1993

Counsel for appellant J.C. Tenorio Enterprises, Inc.:
Theodore Mitchell & Jeanne Rayphand, Saipan.

Counsel for appellee Hafadai Beach Hotel: David Wiseman, Saipan.

BEFORE: ATALIG, Justice, and CRUZ and BELLAS, Special Judges.

ATALIG, Justice:

J.C. Tenorio Enterprises, Inc. ("appellant"), appeals from a March 30, 1993, decision and order of the Superior Court affirming a December 24, 1992, decision of the Appeals Board ("Board") of the Office of Coastal Resources Management ("CRM"). The Board's decision affirmed a November 5, 1992, permit decision in which Hafadai Beach Hotel ("appellee") was allowed to construct an eighteen-story extension to its existing hotel, situated in Garapan, Saipan. We conclude that the Superior Court did not err in holding that substantial evidence supports the Board's decision and that neither procedural due process violations nor a misapplication of the law occurred and for the following reasons affirm.

to which such jurisdiction has been consigned under 2 CMC § 1541(b).[3] We have jurisdiction pursuant to 1 CMC § 3102, which affords this Court "jurisdiction over judgments and orders of the Superior Court."[4] As such, our review is limited to one of the propriety of the Superior Court's decision that substantial evidence supported the Board's decision.[5]

## ISSUES AND STANDARD OF REVIEW

The appellant raises thirteen issues before this Court on appeal, not all of which we feel we need to address. However, they are categorized and listed below:

I. Whether the Superior Court erred, in reviewing the Board's affirmance of the permit decision, by applying the substantial evidence standard of 2 CMC § 1541(b).
II. Whether there was substantial evidence supporting the Board's affirmance of the November 5, 1992, permit decision.

## JURISDICTION

■ It is the local laws and constitution of a forum that consign jurisdiction in a court over an agency action. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 11 cmt. a (1982);[1] 2 Charles Koch, Jr., ADMINISTRATIVE LAW AND PRACTICE [hereinafter "Koch"] §§ 8.46-.48 (1985 & Supp. 1990). We should first look to CRM's enabling legislation for any jurisdictional grant. Koch, *supra*, § 8.46.[2]

■ Nowhere in CRM's enabling legislation, 2 CMC § 1411 et seq., are we afforded the jurisdiction to review the Board's decision proper. It is the trial court

---

[1] Sections 1 through 12 of the RESTATEMENT (SECOND) OF JUDGMENTS (1982) apply to administrative procedures. *See id.* § 1 cmt. b, § 83 cmt. d.

[2] An enabling statute "generally grants *exclusive* jurisdiction for review of orders to that forum (either the district court or courts of appeals)." 2 Charles Koch, Jr., Administrative Law and Practice [hereinafter "Koch"] § 8.2 (1985 & Supp. 1990) (footnote omitted) (emphasis added). This is in contrast to the federal Administrative Procedure Act ("APA"), which does not contain jurisdictional provisions regarding the appellate courts. *See* 16 Charles A. Wright, Arthur R. Miller, Edward H. Cooper & Eugene Gressman, FEDERAL PRACTICE AND PROCEDURE § 3941 (1977) (citing *Dillard v. United States Dept. of Hous. and Urban Dev.*, 548 F.2d 1142, 1143 (4th Cir. 1977) (per curiam); *Noland v. United States Civil Serv. Comm'n*, 544 F.2d 333, 334 (8th Cir. 1976) (per curiam)).

---

[3] "Within 20 days after the final discussion of the Board, a person aggrieved may appeal the decision to the Commonwealth Trial Court." 2 CMC § 1541(b).

[4] We are hesitant to construe jurisdiction under 1 CMC § 9113 of our APA, which affords "[a]n aggrieved party . . . review of any final judgment of the Commonwealth Trial Court under this [Administrative Procedure Act] . . . by appeal to the *District Court for the Northern Mariana Islands.*" (Emphasis added.)

[5] Some appellate courts are specifically afforded review over the final agency action. *See* UNIFORM LAW COMMISSIONERS' MODEL STATE ADMINISTRATIVE PROCEDURE ACT (1981), *reprinted in* 2 Koch, *supra* note 2, at 398-461, which contains alternative review provisions, vesting jurisdiction in either the district or appellate court. *Id.* at 451. We note that courts have reviewed the agency action de novo where afforded jurisdiction only over the final orders of a district court. *See, e.g.*, Koch, *supra*, § 8.54 (Supp. 1990) ("[a]ppellate court may proceed as if the case came directly from the agency") (citing *Biloxi Regional Medical Center v. Bowen*, 835 F.2d 345, 349 (D.C. Cir. 1987)); *see also In re San Nicolas*, 1 N.M.I. 329 (1990) and *Camacho v. Northern Marianas Retirement Fund*, 1 N.M.I. 362 (1990). However, we are mindful of our limited appellate role in this matter and the jurisdictional constraints under which the scope of our review is defined. "Like agencies, the courts must obey the law. They are not free to assume authority over agency action that has not been conferred on them by statute or the constitution." Koch, *supra*, § 9.1 (Supp. 1990).

40

III. Whether the appellant was denied its due process rights.[6]

IV. Whether a conflict of interest arose requiring disqualification of agency officials.[7]

V. Whether CRM failed to comply with its rules and regulations.[8]

VI. Whether the permit decision was arbitrary and capricious.

 Our review of the trial court's review of an agency action is de novo, *In re San Nicolas*, 1 N.M.I. 329, 333-34 (1990) (*cited in Camacho v. Northern Marianas Retirement Fund*, 1 N.M.I. 362, 366-67 (1990)),[9] as is our review of the trial court's application of a standard of review. *See Robinson v. Robinson*, 1 N.M.I. 81, 85-86 (1990) (applicable standard a question of law). Additionally, our review of constitutional claims is de novo as well. *See In re Estate of Tudela*, 4 N.M.I. 1, 2 (1993).

 While we are to give no special deference to the court's conclusion that the Board's decision was based upon substantial evidence, see *Novicki v. Cook*, 946 F.2d 938, 941 (D.C. Cir. 1991), we are to affirm if we conclude that the court did not err in finding substantial evidence supporting the Board's decision, see *Herr v. Sullivan*, 912 F.2d 178, 180 (7th Cir. 1990), and if the Board did not misapply the law. *Id.; see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992); *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989).

---

[6] Specifically: (1) whether the permit decision requires a second hearing; (2) whether the decision constitutes taking of property without due process and just compensation; and (3) whether the appellant was required to be involved in the permit process.

[7] Specifically: (1) whether the Attorney General's office should be disqualified for conflict of interest under the American Bar Association Model Rules of Professional Conduct; and (2) whether the Department of Public Works and the Commonwealth Utilities Corporation should be disqualified for conflict of interest, as they received funds from the developer.

[8] Specifically: (1) whether the permit preserves and enhances scenic resources; (2) whether the applicant failed to provide evidence of no significant impact on coastal resources; (3) whether the decision was made by unanimous vote; (4) whether a conditional permit is permissible under the CRM Act of 1983 and rules and regulations promulgated thereunder; and (5) whether setback regulations are waivable under the CRM Act and rules and regulations.

[9] *See also Greenhow v. Secretary of Health and Human Servs.*, 863 F.2d 633, 636 (9th Cir. 1988), *overruled on other grounds*, 977 F.2d 1348 (9th Cir. 1992).

## BACKGROUND

On December 2, 1991, CRM issued a permit to the appellee to construct an eighteen-story extension to its existing hotel, located in Garapan, Saipan; prior to which a public hearing was held. On December 30, 1991, the appellant, which operates a retail establishment on a property east of and adjacent to the extension project, appealed the granting of the permit to the Board. On February 21, 1992, after holding a hearing on the matter, the Board reversed and remanded the matter to CRM for further review and to make appropriate findings consistent with the CRM Rules and Regulations, 7 Com. Reg. 4087 et seq. (1985), amended, 12 Com. Reg. 7186 et seq. (July 15, 1990) (hereinafter "Rules") and PL 3-47.[10] The trial court noted that following the February 21, 1992, decision, the record demonstrates continued review by CRM of the permit application between the months of March and September of 1992.[11] On March 16, 1992, the Rules were amended to delete the requirement that certain materials be provided in the application.[12] *See* Emergency and Proposed Regulations, 14 Com. Reg. 9173 et seq. (Apr. 15, 1992) (permanently adopted in 14

---

[10] Specifically, the Board concluded that the decision was clearly erroneous, arbitrary and capricious and not in accordance with CRM regulations. The Board found CRM's findings to be insufficient to support the decision, and that it was incumbent upon the applicant, or the appellee, to demonstrate by a preponderance of the evidence that the project would not have a significant adverse impact on the coastal environment or its scenic, historical, coastal biological and water resources. Finally, it found the application incomplete as it did not contain coastal or stormwater plans as required under the regulations. *In re Hafadai Beach Hotel Coastal Permit*, Decision No. SMS 90-X-151 (Feb. 21, 1992) (Decision).

[11] Involved in this review were the CRM Administrator on an almost daily basis, Mr. Efrain Camacho (the Consulting Engineer for the Appellee), personnel of the Appellee and CRM Agency officials. Various board meetings were held, comments were solicited from Appellant and a meeting was held on July 1, 1992, at which Appellant's attorney appeared to discuss the project. Thereafter, the review continued with the Director of Commerce and Labor, who initially would not approve the permit, but did so after a final review.

*In re Hafadai Beach Hotel Extension Coastal Permit Decision SMS-90-x-151* [hereinafter *Hafadai*], Civ. No. 93-0056 (N.M.I. Super. Ct. Mar. 30, 1993) (Decision and Order at 2).

[12] Specifically, the regulations omitted the requirement of an architectural and engineering analysis by the permit applicant.

Com. Reg. 10165 et seq. (Nov. 15, 1992)).

In April of 1992, Camacho filed a supplemental Environmental Impact Assessment ("EIA") with CRM.[13] This EIA elaborated upon the factual data and addressed the concerns raised by the Board in its February 21, 1992, decision. On July 1, 1992, a meeting between CRM officials and the appellant was held. On August 21, 1992, public notice of the recertified completion of the application was published and the appellant was notified by CRM by letter, on August 26, 1992, of such publication. On August 28, 1992, the appellant requested a public hearing on the application.

On November 5, 1992, CRM certified that it had reviewed the permit and found it to be in substantial compliance with the applicable laws, rules and regulations. The appellant again appealed this decision to the Board on the grounds that the decision was: (1) clearly erroneous in light of coastal resources management policies; (2) in violation of applicable constitutional and statutory provisions; (3) arbitrary and capricious; and (4) not adopted in accordance with required procedures. On December 24, 1992, the Board affirmed the November 5, 1992, permit decision. The appellant then appealed to the Superior Court on January 13, 1993, presenting essentially the same issues now before this Court. *See supra* notes 7-9 and accompanying text; *In re Hafadai Beach Hotel Extension Coastal Permit Decision SMS-90-x-151* [hereinafter *Hafadai*], Civ. No. 93-0056 (N.M.I. Super. Ct. Mar. 30, 1993) (Decision and Order at 2-3).

The court reviewed the Board's decision pursuant to 2 CMC § 1541(b) for substantial evidence and not under 1 CMC § 9112(f) of the APA,[14] *Hafadai*, Decision and

Order at 6, and found that the facts regarding the "location, soil and topography, flora and fauna, utilities and infrastructure, shoreline and lagoon, construction impact, erosion and stormwater control, groundwater management, hazardous waste, erosion control, chemical use, disposal of waste water, historical impact, burial grounds, traditional fishing activities and scenic impact, were substantial." *Id.* at 15-16. The court then discussed the other issues raised by the appellant. It concluded that: (1) monies donated were for public and not individual benefit and that there were no conflicts, *id.* at 16-17; (2) a second public hearing was not required under 2 CMC § 1531(c); (3) the appellant's involvement "as an 'aggrieved party'" was not required in the detailed permit process, *id.* at 17-18; (4) there was no conflict of interest on the part of the Attorney General's office, *id.* at 18; (5) signature of the permit by all six agency officials constituted a unanimous decision, as required by 2 CMC §§ 1531(a) and 1538(F)(iii); (6) conditional permits are expressly authorized, *Hafadai*, Decision and Order at 19 (citing *Saipan Beach Resort Hotel*, Decision No. SMS-87-x-137, CRM Appeals Board); (7) setback regulations are to be determined by CRM administration and agency officials; and (8) the appellant's arguments regarding the taking of property lacked merit as a permit decision is not equivalent to condemnation or eminent domain, *Hafadai*, Decision and Order at 19-20. The appellant timely filed a notice of appeal with the Superior Court from this decision.

## DISCUSSION

The appellant objects to purported adverse impacts that the appellee's extension will have both on the scenic view and environmental resources of the area and its private view. Additionally, it argues that the extension of the project should be restricted to the normal CRM height restriction of eighty-five feet. The appellant now raises the same issues on review before this Court as it did before the Superior Court and the Board and one additional issue: whether or not the Superior Court erred in applying the substantial evidence standard of review to the permit decision. We conclude not only that the Superior Court applied the appropriate standard of review in this matter but that the court did not err in finding that substantial evidence supported the Board's affirmance of the CRM permit. Additionally, we conclude that the appellant's due process rights were not abridged and that the appellant's other arguments before this Court are without merit.

---

[13] Previous supplemental environmental impact statements had been filed in January and October of 1991; the original was filed in October of 1990. *See* Appellee's Excerpts of Record at 259-348.

[14] One CMC § 9112(f)(2) of the APA states that a reviewing court may set aside an agency decision where it is:

(A) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) Contrary to constitutional right, power privilege or immunity;
(C) In excess of statutory jurisdiction, authority, or limitations, or short of statutory rights;
(D) Without observance of procedure required by law;
(E) Unsupported by substantial evidence in a case subject to Sections 9108 and 9109 or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) Unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing

court.

42

## I. Review by Superior Court of Permit Decision One of Substantial Evidence and Reasonableness Pursuant to 2 CMC § 1541(b)

 The APA and specific statutes, such as 2 CMC § 1541, work either in conjunction or the latter to the exclusion of the former. *See, e.g., Nevada v. Watkins*, 914 F.2d 1545, 1563 (9th Cir. 1990) (review under APA if not provided for in statutes) (citing *Clementson v. Brock*, 806 F.2d 1402, 1407 (9th Cir. 1986)). Judicial review may be precluded by statute,[15] see 1 CMC § 9112(a)[16]-(b),[17] and this preclusion may be of a form of review as well, see *Federal Trade Commis. v. Standard Educ. Soc'y*, 302 U.S. 112, 117, 58 S. Ct. 113, 116, 82 L. Ed. 141 (1937) (courts may not ignore statutory mandate making commission findings of facts conclusive where supported by evidence). Pursuant to 2 CMC § 1541(b): "The standard for judicial review [of final Board decisions] is whether the decision is supported by substantial evidence on the record made before the Board, taken as a whole; the facts in question are not subject to trial de novo."

 Here the legislature specifically mandated a standard which would otherwise not be applicable under the APA.[18] *See and compare* 1 CMC §§ 9112(f)(2)(E) (substantial evidence standard not applica-

ble to permit process),[19] 9108 (adjudicatory procedures not applicable in permitting process unless required by law to be preceded by notice and opportunity to be heard),[20] 9111(b) (notice and hearing statutorily required only for revocation, suspension, annulment, or withdrawal of permit).[21] The Superior Court was compelled to apply a standard of substantial evidence based upon both 2 CMC § 1541 and the state of the record.[22]

## II. Whether the Superior Court Erred in Finding Substantial Evidence Supporting the Board's Affirmance of the November 5, 1992, Permit Decision

 The final agency decision is the affirmance of the permit grant by the Board, see Rules, *supra*, § 8(G)(ix), and not the CRM permit decision. Hence, the Superior Court was confined to determining not whether CRM properly found the facts but whether there was substantial evidence before the Board supporting its

---

[15] The legislature may make exceptions to the review of agency action by courts. *Cf. Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 672-73, 106 S. Ct. 2133, 2137, 90 L. Ed. 2d 623, 630 (1986). Where there is a clear showing that the legislature intended to preclude judicial review, such a preclusion must be observed. *See Govendo v. Micronesian Garment Mfg., Inc.*, 2 N.M.I. 270, 286 n.20 (1991).

[16] Section 9112 applies only "to the extent that statutes enacted by the Commonwealth Legislature explicitly preclude judicial review." 1 CMC § 9112(a).

[17] "The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in the Commonwealth Trial court . . . ." 1 CMC § 9112(b).

[18] This standard of review appears to apply to all decisions of CRM, whether a formal or informal record exists. Our legislature is not alone in doing this; the U.S. Congress has "in recent times prescribed reasonableness review of both informal adjudication and informal rulemaking by prescribing substantial evidence review." Koch, *supra* note 2, § 9.14 (citing, e.g., 49 U.S.C. § 1486(e) (informal adjudication by FAA); 42 U.S.C. § 405(g) (informal adjudication by SSA); 15 U.S.C. § 717r (b) (Natural Gas Act); 15 U.S.C. § 57a(e)(3) (FTC rulemaking)).

[19] Pursuant to 1 CMC § 9101(c) and (f), agency action includes an agency license, or the denial thereof, and the term license includes permits.

[20] Permitting "usually involve[s] both general rulemaking and adjudication of individual claims." Koch, *supra* note 2, § 2.33. However, formal adjudicative processes are rarely used. *Id.*

[21] The hearing procedures of CRM are informal. *See generally* CRM Rules and Regulations, 7 Com. Reg. 4087 et seq. (1985), amended, 12 Com. Reg. 7186 et seq. (July 15, 1990) and 14 Com. Reg. 10165 et seq. (Nov. 15, 1992) [hereinafter "Rules"] § 8(D). Generally, unless otherwise provided statutorily, the review of a formal hearing is for substantial evidence and the review of an informal hearing is for arbitrariness. Koch, *supra* note 2, § 9.13 (Supp. 1990) (citing *Castillo v. Army & Air Force Exch. Serv.*, 849 F.2d 199, 203 n.1 (5th Cir. 1988)). However, even if the process mandated is informal, the court may apply a higher standard, such as reasonableness, where prescribed. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 1607, 84 L. Ed. 2d 643, 656 (1985) ("[t]he APA specifically contemplates judicial review on the basis of the agency record compiled in the course of informal agency action"). "Courts have incorrectly refused to apply the mandated level of review or they have imposed a record requirement not intended by Congress merely because they feel they face inconsistent instructions. More flexible judicial minds can accommodate reasonableness review to informal records." Koch, *supra*, § 9.14.

[22] *See supra* note 21.

affirmance of the permit decision.[23] The substantial evidence standard for facts means that "[t]he decision must be reasonable after consideration of the facts in the record[24] opposing the agency position as well as that supporting it . . . [and] [t]he . . . review[ing] court [is] to uphold the agency finding even if supported by 'something less than the weight of the evidence.'" Koch, *supra*, § 9.16 (Supp. 1990) (footnotes omitted).[25] Questions of law under the substantial evidence or "reasonableness" standard are examined to determine if "the agency's conclusions are reasonable based on the information package used by the agency in making the decision."[26] *Id.* § 9.14.[27]

---

[23] The Board implements a different standard upon its review of the permit decision, and was required to remand if that decision was: "(a) . . . clearly erroneous in light of CRM rules and regulations and the policies established in CNMI P.L. 3-47; (b) . . . in violation of applicable Federal or CNMI constitutional or statutory provisions; (c) . . . arbitrary or capricious; or (d) . . . not issued in accordance with required procedures." Rules, *supra* note 21, § 8(G)(viii); *see also* 2 CMC § 1541(b).

[24] The Superior Court "should accept the *agency's* factual findings if those findings are supported by substantial evidence." *Arkansas v. Oklahoma*, 503 U.S. 91, __, 112 S. Ct. 1046, 1060, 117 L. Ed. 2d 239, 259 (1992).

[25] *See also Greenhow*, 863 F.2d at 636-37 ("Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (citations omitted); *David v. Camacho*, 2 CR 718, 721 (D.N.M.I. App. Div. 1986).

[26] Questions of law in permit decisions are usually freely reviewable by a court and subject to the standard of "unwarranted by the facts to the extent that the facts are subject to trial de novo" listed in the APA. 1 CMC § 9112(f)(2)(E). However, we must observe 2 CMC § 1541, which mandates a standard of substantial evidence or, more properly termed, "reasonableness." However, even where this test is applied, "the court will be the final authority on legal issues." Koch, *supra* note 2, § 9.18 (Supp. 1990) (citing *Texas Power & Light v. FCC*, 784 F.2d 1265, 1269 (5th Cir. 1986)).

[27] "Even in those situations where the applicable standard of review substantially narrows the judicial function, a court must adjust its function to that defined standard." Koch, *supra* note 2, § 9.4 (Supp. 1990). With the substantial evidence test, a demand for "a certain quantity of evidence necessarily focuses on factfinding. For this reason, the test should be applied to factual issues and confusion develops when a court attempts to apply the test to the whole decision or nonfactual issues within the decision." *Id.* However, this standard has also been referred to as a "reasonableness" standard, which "applies to issues other than facts that can be supported by reasonable

The record shows that the court carefully considered the entire record and enunciated the findings it deemed in support of the decision. The evidentiary record before the Board, and considered by the court, included: (1) the scope of the project; (2) factual findings and conclusions of law of CRM; (3) information on the impact by the height exception on scenic, historical, coastal, biological, and water resources; (4) parking requirements; and (5) structural orientation. *Hafadai, supra*, Decision and Order at 8-16. Additionally, the court noted the specific factual findings before the Board, *id.*, slip op. at 8-12, and concluded that they were substantial.[28] We have reviewed the record in this matter and agree with the Superior Court that these findings are substantial in that they adequately support the Board's decision and that the Board's conclusions of law were reasonable.

## III. The Due Process Claims

The appellant contends that it was denied its due process rights because the CRM Administrator failed to schedule a second public hearing after the 1992 reversal and remand by the Board to CRM and because it was required to be involved in the permit process as the decision constituted a taking of property without due process and just compensation. This "taking" from the appellant goes to "the ability to use and enjoy the scenic resources of the Saipan beach, lagoon and ocean." Appellant's Brief at 47. In addition to ensuring that the correct standard of review was applied by the lower court, we may also consider constitutional claims of an appellant. *See Barry v. Bowen*, 825 F.2d 1324, 1331 (9th Cir. 1987).

For due process claims to be considered, the proceeding must be one to which such rights attach. We must first determine if a due process interest is implicated and, second, determine what procedures protect that interest sufficiently to satisfy due

---

evidence," even where conclusions are usually tested for arbitrariness. Id.

[28] These findings fell, and were listed by the Superior Court, under six categories of potential adverse impacts: (1) alteration of chemical or physical properties of coastal or marine waters; (2) accumulation of toxins, carcinogens, or pathogens; (3) disruption of ecological balance; (4) addition of man-made substances, the impact of which upon the coastal or marine environment is unknown; (5) disruption or burial of bottom communities (e.g., coral); and (6) interference with traditional fishing activities. *Hafadai, supra* note 11, Decision and Order at 8-12.

process. *Cf. Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985).[29] However, for a claim on constitutional due process grounds to be pursued it must at the very least be "colorable" to confer subject matter jurisdiction in an appellate court. *See Callis v. Department of Health & Human Servs.*, 877 F.2d 890, 891 (11th Cir. 1989) (not addressing claim where unsupported by evidence). The appellant bears the burden of proof as the proponent of an order of this Court setting the trial court's affirmance of the agency decision aside. *See Chemical Waste Mgmt., Inc. v. Environmental Protection Agency*, 649 F. Supp. 347, 354 (D.C. Cir. 1986) (where standard is deferential, burden of overcoming presumption that agency action is valid is on party challenging action); *cf. San Nicolas*, 1 N.M.I. at 335 (citing 1 CMC § 9109(i)). The appellant has failed to show that its constitutional claim has merit.

 First, the appellant's interest in preserving its view is simply not one protected under the statute or regulations of CRM. Second, while the public has an interest in the preservation of both the scenic view and the environment, that interest is sufficiently safeguarded procedurally by applicable CRM statutes and regulations. Additional required procedures would unduly burden CRM and adversely affect governmental interests in efficiency. Finally, a "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18, 32 (1976) (citation omitted). Meetings were held, both before and after the remand of the Board, between CRM and the appellant and a public hearing was held on the matter within the initial prescribed review period.[30] That meetings were held and the appellant was afforded the opportunity to participate in an ante-remand public hearing and a post-remand meeting does not mean that any due process right it may have had was not observed.[31] If anything, CRM appears to have bent over backward to accommodate the appellant.[32]

## IV. The Appellant's Other Claims

 The appellant's three other claims are that: (1) a conflict of interest arose requiring disqualification of an agency; (2) CRM failed to comply with its rules and regulations; and (3) the decision was arbitrary and capricious. The third claim involves a standard of review which is encompassed by that of substantial evidence.[33] In other words, as we found substantial evidence supporting the affirmance of the Board decision, it was not arbitrary and capricious. Additionally, some of the appellant's contentions that CRM failed to comply with its rules and regulations, see *supra* note 9, are either not properly before this Court, as they either go to the factual findings of the agency officials (and not whether the Board's decision was supported by substantial evidence) or are addressed in the previous substantial evidence and due process analyses. Finally, whether or not a conflict of interest arose requiring the disqualification of an agency or agencies from the Board is a mixed question posed before the Board and reviewed by the Superior Court under the substantial evidence and reasonableness tests. We find no error on the part of the court in this matter. There are no provisions in either the

---

[29] The interests in this matter go to the appellant's own view, the scenic view of the area, and environmental concerns. To determine whether these interests implicate due process rights, federal courts use the test in *Mathews v. Eldridge*, 424 U.S. 319, 333-35, 96 S. Ct. 893, 901-03, 47 L. Ed. 2d 18, 31-33 (1976) (*quoted in* Koch, *supra* note 2, § 7.24 (Supp. 1990)). Under this test, the private interest is weighed with the probable value of additional procedure and the government's interest, see *id.*, with special weight given to the private interest. *Haygood v. Younger*, 769 F.2d 1350, 1355-56 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020, 106 S. Ct. 3333, 92 L. Ed. 2d 739 (1986). Only then do we consider whether or not there was a violation of due process.

[30] There is no specific statutory requirement for a hearing and Rules, *supra* note 21, § 8(D) provides that either where requested or required by a CRM agency official, a public hearing must be held within the sixty day review period. That review period begins on the day the application is certified

complete by CRM. *Id.*, § 8(D)(ii).

[31] See *Fleetwood Enters., Inc. v. Department of Hous. and Urban Dev.*, 818 F.2d 1188, 1195 (5th Cir. 1987) (where informal procedure statutorily mandated regulated agency may hold "either a formal adversary administrative hearing or an informal nonadversary proceeding"). Unless an evidentiary hearing is required by statute, an agency has considerable discretion in deciding how to proceed. *Washington v. Office of Comptroller of Currency*, 856 F.2d 1507, 1512 (11th Cir. 1988).

[32] Even if we were to conclude that the recertification of the permit triggered a new fifteen day notice period, see Rules, *supra* note 21, § 8(B), CRM'S failure to hold a post-remand hearing would amount to, at best, harmless error in this case, and there was no error by the Board in determining that the CRM procedures implemented comported with the law.

[33] "[A]n agency ruling is 'arbitrary and capricious if the agency has . . . entirely failed to consider an important aspect of the problem.'" *Arkansas*, 503 U.S. at ___, 112 S. Ct. at 1060, 117 L. Ed. 2d at 259 (1992) (citation omitted).

CRM regulations or statutes requiring the disqualification of an entire agency, an agency *required* to participate in the permit proceedings.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Superior Court's affirmance of the Board's affirmance of the CRM permit decision is **AFFIRMED**.