[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
MAR 01 2001
THOMAS K. KAHN
CLERK

————————————————

No. 99-14862

————————————————

D. C. Docket No. 95-01238-CIV-J-20B

MARITIME MANAGEMENT, INC.,
a Florida corporation,

Plaintiff-Appellee,

versus

UNITED STATES OF AMERICA,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

**(March 1, 2001)**

Before BLACK, FAY and COX, Circuit Judges.

PER CURIAM:

The Government appeals the district court's award of attorneys' fees to Maritime Management, Inc. pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412.

## I.   FACTS AND PROCEDURAL HISTORY

In September of 1994, the Department of the Navy through Military Sealift Command solicited bids for a contract to supply layberthing facilities and services for two SL-7 Fast Sealift Ships.  The SL-7s, measuring 946 feet in length and 105.6 feet in width, provide rapid sealift of military cargo for the Armed Forces from the United States to locations around the world.  Because of their large size and their military charge, provision of layberthing facilities for these vessels requires special considerations, all of which were detailed in the bid request as minimum requirements for the award of the contract.  Military Sealift Command (the Agency) rated bids for cost and for conformity to these minimum requirements.

The Agency received six initial offers from five competing bidders and reviewed each for technical deficiencies.  After the submission of best and final offers, only two acceptable bidders remained: Maritime Management, Inc. (Maritime) and Keystone Ship Berthing, Inc. (Keystone).  The Agency awarded the contract to Keystone as the lowest acceptable bidder and Maritime protested the award to the General Accounting Office, citing technical deficiencies in Keystone's offer.  Award

2

of the contract was suspended pending review. The Agency submitted the administrative record to the General Accounting Office (GAO),[1] which upheld the award to Keystone and lifted the contract suspension.

Maritime filed a complaint in the district court, claiming the Agency violated the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. Maritime asserted the award to Keystone was arbitrary and capricious because Keystone's bid proposal failed to satisfy the minimum requirements of the bid solicitation in the areas of safe berthing, safe working area, water depth for access routes, security, mooring, roadways, and fuel bunkering. (R.1-16 passim.)

The case was referred to a magistrate judge for preparation of a report and recommendation. Early in the proceedings the parties disputed the composition of the administrative record. In support of a motion for summary judgment, the Government submitted what it characterized as "the entire Administrative Record," (R.1-21 at 1) and Carole H. Wieszek, the contracting officer responsible for procurement and administration of the contract, certified that "the decision to award the above-mentioned contract was based on these documents." (R.1-24 at 1.) The Government's submission consisted of two black binders, tab numbers one through thirty-four, and

---

[1]      31 U.S.C. § 3553(b)(2) places on the federal agency the duty to include "all relevant documents" relating to the protested procurement in a report to the Comptroller General within thirty days of receipt of notice of the protest. 31 U.S.C.A. § 3553(b)(2)(A) (West Supp. 2000).

3

some site drawings – the same information that the Government had filed with the GAO as the administrative record.

Next, arguing that "the Court's scope of review is limited to the Administrative Record," the Government asked for a stay of all further discovery and requested a protective order relieving it from responding to Maritime's outstanding interrogatories, requests for production and requests for admission. (R.1-27 at 2.) Maritime, opposing the motion, questioned whether the Government had submitted a complete record, and requested limited discovery. (R.1-32 at 6.) The magistrate judge, stating that "[i]t appears to the Court that the United States has not submitted the entire administrative record," directed the parties to confer and jointly determine the complete record. (R.2-34 at 2.)

After three meetings the parties failed to agree, and Maritime, asserting that in the meetings "it was determined that [the Government] failed to file several documents with its initial purported 'record,'" informed the court of the impasse. (R.2-36 at 2.) The magistrate judge scheduled an evidentiary hearing on the matter. The day before the hearing the Government moved to supplement the record with the agency report and additional materials, tab numbers thirty-five through forty-two. The additional materials were discovered after the Government "requested that the federal agency review its file and determine all documents considered by the agency

4

in making its decision to award the contract in question." (R.2-39 at 2.) No explanation was offered for their prior omission from the record. At the hearing, responding to allegations from Maritime and repeated questions from the magistrate judge, counsel for the Government admitted that tab numbers thirty-five through forty-two had not previously been included in the binders submitted to both the GAO and to the court. The Government also acknowledged that the Agency bore responsibility for compiling the record.[2] The Government continued to oppose inclusion of certain items, including the protest letter Maritime filed with the GAO, as well as several other post-award documents.[3]

Following the hearing, the magistrate judge issued an order including tabs thirty-five through forty-two, the agency report, Maritime's initial protest document,

---

[2] The exchange between counsel for the Government and the court was as follows:
MR. LUSTER: . . . I can just simply state to the Court that the records that I am tendering at this time should have been a part of the two black binders which have been filed to the Court.
THE COURT: And do you also agree that they were not given to GAO or you just don't know that?
MR. LUSTER: They were not a part of the agency report, so I would think that they were not presented to GAO, that's correct. They were not a part of the report. And the agency prepares the report and submits those documents it thinks it should submit in order to sustain the agency's action. (R.8 at 10-11.)

[3] The post-award documents included: a November 22, 1995 letter and handwritten notes concerning a post-award site inspection; a two-page memorandum dated March 13, 1995 from the Contracting Officer concerning the Keystone facility, which was a followup to a February 10, 1995 e-mail; a March 27, 1995 report from Reynolds, Smith, and Hills, Inc.; a March 27, 1995 memorandum from Captain David R. Kelly; and a March 27, 1995 fax containing Corps of Engineer definitions.

and certain post-award documents in the administrative record.[4] The magistrate judge lifted the Government's protective order, which had been temporarily in place prior to the hearing, allowing Maritime to proceed with limited discovery.[5] In so doing the magistrate judge noted that a court's review of a decision to award a contract will not be limited to the formal record if a plaintiff makes "a strong showing of bad faith or improper behavior," quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S. Ct. 814, 825 (1971), *overruled on unrelated grounds by Califano v. Sanders*, 430 U.S. 99, 105 97 S. Ct. 980, 984 (1977), and concluded that "[a]t this point plaintiff has made a sufficient showing to justify at least limited discovery. It is clear that the complete administrative record was not submitted to the GAO." (R.2-44 at 8-9.)

---

[4]     Specifically, the magistrate judge included the two-page memorandum dated March 13, 1995 from the Contracting Officer concerning the Keystone facility. Noting the omission from the administrative record of this document and the e-mail to which it refers, the magistrate judge noted "[n]either the February 10, 1995 cc mail nor this March 13, 1995 memorandum were included in the documents sent to the GAO . . . despite the statutory requirement that the agency report contain all relevant documents. The Court finds that the March 13, 1995 memorandum should be made part of the Administrative Record." (R.2-44 at 7-8.)

[5]     Discovery was limited as to "(1) the change in the solicitation reflected at Tab 42, (2) the existence and subject matters of the February 10, 1995 'cc mail', and (3) the subject matters of the March 13, 1995 memorandum by the Contracting Officer." (R.2-44 at 10.)

The Government filed a Rule 72 objection to the magistrate judge's order with the district court.[6]  *See* FED. R. CIV. P. 72.  The district court rejected the Government's objection, concluding that limited discovery was indeed proper because of the Government's "failure to include relevant documents in the report to the GAO and in light of the negative nature of those documents purposefully excluded from the report.  Such evidence constitutes a showing of bad faith or improper behavior on the part of Defendant justifying additional discovery." (R.2-50 at 2.) On January 2, 1997, the magistrate judge issued an order finally determining which documents would constitute the administrative record.  (R.3-74 at 4.)  Some of the documents that had been the subject of the Government's arguments at the evidentiary hearing and the Rule 72 objection were included in the record.[7]

The magistrate judge's Report and Recommendation advised the district court to enter judgment in favor of Maritime and award it the contract, or, in the alternative, to allow full discovery on whether there was good faith review of the proposals. (R.4-100 at 58-59.)  The magistrate judge determined that the Agency had improperly

---

[6]    The Government contended that the magistrate judge erred by concluding that 31U.S.C. § 3556 permitted inclusion of Maritime's protest documents, in permitting Maritime to engage in limited discovery concerning the three documents listed supra, and in the conclusion that tabs one through thirty-three had not been submitted to the GAO. (R.247 at 15.)  This last contention was a mis-reading of the magistrate judge's order; the order did not conclude that tabs one through thirty-three had not been submitted to the GAO.

[7]    This included Maritime's February 2, 1995 protest letter and its attachments, as well as the March 13, 1995 memorandum by the Contracting Officer.

relaxed the bid requirement regarding security, thereby prejudicing Maritime's opportunity to compete for the contract. The district court agreed that the Agency had violated federal regulations by relaxing the bid requirement, but concluded that there was no showing of prejudice to Maritime. (R.4-104 at 2.) Instead of awarding the contract to Maritime, the district court ordered a rebidding of the contract.

Both parties appealed to this court. Maritime argued that the contract should not be rebid but should be awarded to Maritime, and the Government argued that without a showing of prejudice the contract should neither be rebid nor awarded to Maritime. This court affirmed the district court's decision, agreeing with the no-prejudice finding and stating that because the Contracting Officer had violated the law, the district court did not err in setting aside the contract. *See Maritime Management v. United States*, No. 98-2380, mem. op. at 3-4 (11th Cir. January 28, 1999).

Following that decision, in the judgment from which the current appeal is taken, the district court granted Maritime's motion for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, in the amount of $281,225.00. (R.4-133 at 2.) The order identified the Government's bad faith in failing to submit a complete administrative record as both the basis for the award and the reason for exceeding the per hour cap established by 28 U.SC. § 2412(d)(2)(A).

## II.  ISSUES ON APPEAL

On appeal the Government argues that the district court erred because (1) its position was substantially justified, making any award of fees improper; (2) no evidence supports the bad faith finding; (3) the award included fees incurred during the GAO proceedings that are not compensable under the EAJA; and (4) that the portion of the award that reimbursed expenses incurred by Maritime's president were purely personal in nature and therefore improper.

## III.  STANDARD OF REVIEW

This court reviews the decision to grant or deny attorneys' fees under the EAJA for abuse of discretion.  *National Treasury Employees Union v. Internal Revenue Service*, 735 F.2d 1277, 1278 (11th Cir. 1984).  The district court's finding of bad faith is a finding of fact that we review for clear error.  *Long v. Florida*, 805 F.2d 1542, 1550 (11th Cir. 1986), *rev'd on other grounds* 487 U.S. 223, 108 S. Ct. 2354 (1988).

## IV.  DISCUSSION

### A.  The Equal Access to Justice Act

In 1981 Congress enacted the Equal Access to Justice Act, amending 28 U.S. § 2412 to give district courts the discretion to award attorneys' fees.  Pub. L. No. 96-481, § 204, 94 Stat. 2325 *et seq.* (codified as amended at 5 U.S.C.A. § 504 and 28 U.S.C.A. § 2412).  The primary purpose of the EAJA is "to ensure that [private

parties] will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights." H.R.Rep. No. 99-120, at 4 (1985), *reprinted in* 1985 U.S.C.C.A.N. 132, 132-33. Congress also anticipated that the EAJA would discourage federal agencies from taking frivolous positions. *See Miles v. Bowen*, 632 F. Supp. 282, 283 (M.D. Ala. 1986).

The statutory framework of 28 U.S.C. § 2412 contains two parallel provisions for awarding attorneys' fees to plaintiffs that prevail in civil suits against the United States. The first of these, § 2412(b), waives sovereign immunity by making the United States liable for fees "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b). Because of this provision the equitable exceptions to the American Rule apply to the federal government in the same manner as they apply to private litigants. *Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1510 (11th Cir. 1988). This makes an award of fees proper under common fund and common benefit theories, as well as in situations where the government has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons" in its conduct of litigation. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59, 95 S. Ct. 1612, 1622 (1975); *see also* 10 James Wm. Moore et al, Moore's Federal Practice

§ 54.172[1][b] (3d ed. 1999) (describing equitable exceptions to American Rule as common fund, common benefit, and bad faith). The award of fees under § 2412(b) is discretionary.

Section 2412(d) provides an alternative vehicle for an award of fees to plaintiffs who have prevailed in non-tort suits against the United States. Statutorily and conceptually distinct from its § 2412 counterpart, subsection (d) was revived by congressional amendment in 1985 after having lapsed under the original statute's sunset provision. *See* Pub. L. 99-80, § 6, 99 Stat. 186 (codified at 28 U.S.C. § 2412(d)). Unlike § 2412(b), which is not limited in this respect, § 2412(d) requires parties to qualify under statutorily prescribed net worth maximums. *See* 28 U.S.C. § 2412(d)(1)(C)(2)(B) (defining "party" for purposes of subsection (d) by net worth); *Panola Land Buying Ass'n*, 844 F.2d at 1510 (differentiating subsections).

Also, where § 2412(b) is discretionary, § 2412(d) is mandatory; the assessment of fees in favor of an eligible prevailing party and against the government is obligatory under subsection (d) unless "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Another difference in keeping with the discretionary distinction between §§ 2412(b) and (d) is that under the former subsection, fees are awarded at a rate determined by the district court, whereas under the latter, awards are

11

subject to a statutory cap. *See* 28 U.S.C. § 2412(d)(2)(A) (listing presumptive cap of $125 per hour); *Cazares v. Barber*, 959 F.2d 753, 755 (9th Cir. 1992) (noting award under § 2412(b) is not subject to fee cap of § 2412(d)(2)(A)).

B.    Substantial Justification

The Government argues that an award of attorneys' fees is improper because its position in the litigation was substantially justified. *See* 28 U.S.C. § 2412(d)(1)(A). The Government characterizes its position as this argument:  that Maritime must establish that it was prejudiced by the relaxation of the bid requirement before the district court could overturn the contract award.  Because we conclude that the district court awarded fees under § 2412(b), which has no substantial justification provision, we do not decide whether this aptly characterizes the Government's litigation position, nor do we decide whether the Government's position was substantially justified.

The first citation to the EAJA in the district court's order is to § 2412(b), which is cited for the general proposition that fees may be awarded.  Thereafter the district court states that "the Government has failed to meet its burden to demonstrate that it was substantially justified in it's [sic] position." (R.4-133 at 2.)  As discussed above, when a district court determines under the § 2412(d) framework that the Government's position is substantially justified, the otherwise mandatory fees may not be awarded.

12

The Government points to this allusion to § 2412(d) as an opportunity to argue that its position was substantially justified, and therefore an award of any size was error. Of course, for this line of argument to be relevant, the district court must have predicated the award on § 2412(d). Section 2412(b) has no substantial justification requirement.[8] Following the language cited by the Government, the order proceeds to consider the applicability of the § 2412(d)(2)(A) fee cap discussed supra, concluding correctly that it does not control where the court's decision is predicated on the § 2412(b) bad faith finding. This discussion is followed by the statement that "the Court finds that the Government acted with bad faith . . . ." (R.4-133 at 2.)

From this we conclude that the district court determined attorneys' fees could be awarded on either of the EAJA's alternative bases, but held that the Government's bad faith made § 2412(b) the appropriate rubric for assessing fees. Because the

---

[8] Much of this discussion is made academic by the conclusion infra that the Government was guilty of bad faith. Bad faith is generally considered to be a higher standard than substantial justification, in the context of the EAJA, *see, e.g. Perales v. Casillas,* 950 F.2d 1066, 1072 (5th Cir. 1992) (noting failure of bad faith claim did not mandate conclusion that government's position was substantially justified); *Barry v. Bowen*, 825 F.2d 1324, 1334 (9th Cir. 1987) *abrogated on other grounds*, 884 F.2d 442 (9th Cir. 1989) (bad faith standard "higher than the substantial justification standard"); Gregory C. Sisk, "The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part Two) 56 La. L. Rev. 1, 54 (1995) (noting that where the government acts in bad faith, this "undermines the 'substantial justification' for the government's position"), as well as in other areas. *Cf. United States v. Truesdale,* 211 F.3d 898, 908 (5th Cir. 2000) (holding that in order to establish bad faith claim under Hyde Amendment, criminal defendant must show more than that government's position was not substantially justified). Here we simply conclude that the basis for the district court's award of fees was § 2412(b) rather than § 2412(d).

13

court's reference to § 2412(d) was dicta, and the ultimate basis for the award was § 2412(b), under which the Government may not avoid an award by showing substantial justification, we now turn to the Government's bad faith argument.

C.    The Bad Faith Finding

The main focus of the Government's appeal is to challenge the district court's bad faith finding.    As noted above, the EAJA allows courts to use their inherent power to assess attorneys' fees when the government has acted in bad faith.  The bad faith exception to the American Rule is not limited to suits that are filed in bad faith; the exception also encompasses bad faith acts preceding and during litigation. *Kreager v. Solomon and Flanagan*, 775 F.2d 1541, 1543 (11th Cir. 1985) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-66, 100 S. Ct. 2455, 2464 (1980)). In determining the propriety of a bad faith fee award, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *Rothenberg v. Security Mgmt. Co.*, 736 F.2d 1470, 1472 (11th Cir.1984) (citation omitted). The Government contends that there is no evidence to support the bad faith finding, and that the district court's decision is predicated on a misunderstanding concerning a discovery dispute that was ultimately resolved in the Government's favor.

In the Government's version of events, the magistrate judge's May 6th order did not conclude that the Government demonstrated bad faith by delivering an incomplete administrative record to the GAO. Rather, the magistrate judge determined that the record was incomplete; that limited discovery was necessary to investigate the relevance of specific documents excluded by the Agency from its submission to the GAO and to the court, exclusion of which *might* evidence bad faith on the part of the Government; and that while the district court's order of May 22, 1996 included language that appeared to prejudge the question of possible bad faith,[9] the facts uncovered by the ordered discovery actually exonerated the Government. In support of this argument, the Government notes that the magistrate judge's Report and Recommendation and the district court's merits decision, while ultimately agreeing with Maritime's allegation that the Agency had improperly relaxed the safety provision in its award of the contract, are devoid of any discussion of bad faith on the part of the Government.

The premise of the Government's argument is that the district court's bad faith finding only concerned the omission of the three items that were the subject of the

---

[9]      In the May 22 order, the district court held that "discovery is proper in this case in light of Defendant's failure to include relevant documents in the report to the GAO and in light of the negative nature of those documents purposefully excluded from the report. Such evidence constitutes a showing of bad faith or improper behavior on the part of Defendant justifying additional discovery." (R.2-50 at 2.)

magistrate judge's limited discovery order.[10]  According to this theory, the district court simply misinterpreted the magistrate judge's May 6th order when it concluded that by withholding documents the Government was guilty of bad faith.  The Government argues it can expose the district court's error by showing that the subsequent discovery actually exonerated the Government of Maritime's charges.  A review of the record reveals that the Government is incorrect both in its premise and in its conclusion.

As noted above, the original submission of the administrative record, both to the GAO and to the district court, consisted of two black binders divided by thirty-four consecutively numbered tabs.  On April 17, 1996, after the scope of the administrative record had been called into question, the Government moved to supplement these two binders with additional documents.  These additional items were eventually numbered as tabs thirty-five through forty-two.  It was at this juncture that Maritime pressed for inclusion of, among other items, the three documents that were later the subject of limited discovery.

Following the evidentiary hearing, the magistrate judge on May 6th ordered that tabs thirty-five through forty-two would be included as a part of the record.

---

[10]    As noted above, discovery was limited to the following areas: "(1) the change in the solicitation reflected at Tab 42, (2) the existence and subject matters of the February 10, 1995 'cc mail', and (3) the subject matters of the March 13, 1995 memorandum by the Contracting Officer."  (R.2-44 at 10.)

16

Significantly, the magistrate judge also concluded that the Government had failed to fulfill the statutory duty imposed by 31 U.S.C. § 3553(b)(2) to provide "all relevant documents." (R.2-44 at 9.)  The magistrate judge reached this conclusion, at least in part, from examining documents that the Government had just at this point submitted for inclusion in the record:  "[a] comparison of the documents attached to the agency report, Tab 43, Ex. A-L, with the Administrative Record now submitted by the United States shows the obvious omission of documents submitted to the GAO."  (R.2-44 at 9.)

The magistrate judge's conclusion that "obviously relevant" documents had been omitted from the Agency's submission to the GAO was not limited to the three documents that became the subject of  limited discovery.  The omission certainly included, at a minimum, all documents tabbed as thirty-five through forty-two.  This alone contradicts the Government's premise – that the bad faith finding related only to the three subjects of limited discovery.[11]

---

[11]       Of course, the Government had already admitted that tabs thirty-five through forty-two were not submitted to the GAO at the evidentiary hearing.  In the face of objections by Maritime that the Agency had compiled an incomplete administrative record, the Government urged the magistrate judge to add tabs thirty-five through forty-two. This was a clear retreat from the Government's  previous representation that tabs one through thirty-four constituted "the entire Administrative Record."  (R.1-21 at 1.)

The magistrate judge also ultimately included in the administrative record at least one of the items that had been the subject of limited discovery.[12] As explained in the May 6th order, a court's review of a decision to award a contract is normally limited to the formal record compiled by the agency, but would not be so limited here if "plaintiff [made] 'a strong showing of bad faith or improper behavior.'" (R.2-44 at 9.) The magistrate judge's inclusion of such items in the record indicates that Maritime succeeded in carrying its burden. While this does not conclusively determine the issue, it is nonetheless apparent from the record that the limited discovery did not fully exonerate the Government from Maritime's allegations.

Thus, if we were to restrict our inquiry to the proceedings before the magistrate judge, we would conclude that the Government is wrong about the meaning of the magistrate judge's order and about the outcome of limited discovery. The Government omitted several documents from the record that were never the subject of limited discovery, and, in any event, items that were the subject of limited discovery were ultimately included in the record. It is impossible to conclude that limited discovery exonerated the Government.

---

[12] The magistrate judge's determination of the administrative record specifically included the March 13, 1995 memorandum by the Contracting Officer, the third subject of limited discovery. Apparently the February 10, 1995 e-mail, item number two, was excluded. As to the first discovery issue, while the Government argues that it ultimately disproved Maritime's contention that Tab 42 reflected a change in the solicitation, Tab 42 was also included in the administrative record. (R.3-74 at 4.)

However, we do not need to reconstruct the gradual unraveling of the Government's position before the magistrate judge to understand the district court's bad faith analysis.[13] The district court clearly states in both the order approving limited discovery and in the order awarding attorneys' fees that the Government demonstrated bad faith by submitting an incomplete administrative record.[14]

Other circuits have recognized bad faith where "a party, confronted with a clear statutory or judicially-imposed duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights." *American Hospital v. Sullivan*, 938 F.2d 216, 220 (D.C. Cir. 1991) (citation omitted). It was the statutory obligation of the Agency to provide "all relevant documents" for review after Maritime challenged the contract award. *See* 31 U.S.C. § 3553(b)(2). Until the eleventh hour of the discovery dispute,

___

[13] The Government also contends that the district court's award of attorneys' fees was in error because it failed to make specific findings justifying such an award, citing this court's decision in *Rothenberg v. Security Management Co.*, 736 F.2d 1470 (11th Cir. 1984). Unlike *Rothenberg*, where the reviewing court was left to discern the propriety of the bad faith finding from conclusory statements regarding the dilatory motives of a plaintiff accused of filing baseless claims, here the district court specified the very act that justified the award of fees: filing an incomplete administrative record. *See Rothenberg*, 736 F.2d at 1472.

[14] In the order approving discovery, the district court held that "discovery is proper in this case in light of Defendant's failure to include relevant documents in the report to the GAO and in light of the negative nature of those documents purposefully excluded from the report. Such evidence constitutes a showing of bad faith or improper behavior on the part of Defendant justifying additional discovery." (R.2-50 at 2.) In the order awarding attorneys' fees, the district court found "that the Government acted with bad faith because it clearly failed to submit the complete administrative record." (R.4-133 at 2.)

19

when one day before the evidentiary hearing it finally, and only partially, retreated from this position, the Government had consistently maintained that it had submitted a complete administrative record.[15] The district court found otherwise, and the order upholding the magistrate judge's decision to conduct limited discovery specifically states that the Government purposefully withheld negative documents. The district court's conclusion that the Government exhibited bad faith has ample support in the record.

D.    Award of Fees for General Accounting Office Proceedings

The Government asserts that Maritime should not have been compensated for fees incurred during the GAO proceedings as they are not compensable under the EAJA. The Government contends that these proceedings constitute administrative consideration of a claim, and therefore are not associated with the pursuit of a civil action as required by 28 U.S.C. § 2412. Maritime agrees that in the ordinary analysis claimants may not recover fees and expenses incurred during an award protest filed before the GAO, but argues that because the Government's bad faith conduct before

---

[15]    As noted supra, in support of its motion for summary judgment, the Government submitted what it characterized as "the entire Administrative Record," (R.1-21 at 1) and Carole H. Wieszek, the contracting officer responsible for procurement and administration of the contract, certified in her declaration that "the decision to award the above-mentioned contract was based on these documents." (R.1-24.)

the GAO deprived Maritime of an opportunity for fair review at the administrative stage, an award of these fees is proper in this case.

The EAJA only permits assessment of fees against the Government to a prevailing party in a civil action . *See* 28 U.S.C. § 2412(b) & (d). In this context, the words "civil action" include proceedings for judicial review of agency action and appeals of decisions made by "a contracting officer rendered pursuant to a disputes clause in a contract with the Government or pursuant to the Contract Disputes Act of 1978." 28 U.S.C. § 2412(d)(1)(A) & (d)(2)(E). Because GAO proceedings do not fit either of these categories, and because they are not adversary adjudications as comprehended by 5 U.S.C. § 504(b)(1)(C), *see* 28 U.S.C. § 2412(d)(3), they are generally not compensable under the EAJA. *Vibra-Tech Engineers, Inc. v. United States*, 787 F.2d 1416, 1419-20 (10th Cir. 1986).

However, where administrative proceedings are intimately tied to the resolution of the judicial action, the administrative proceeding may sometime be considered a part of the civil case for which fees are awarded. *Pollgreen v. Morris*, 911 F.2d 527, 534 (11th Cir. 1990).[16]    Maritime would have us find that the Government's bad

---

[16]    *Pollgreen* allowed plaintiffs to recover fees for administrative proceedings conducted on remand from the district court where "plaintiffs were denied the opportunity for an appropriate post-deprivation hearing at the administrative level, [such that] they were forced to seek their initial relief from federal court." *Pollgreen v. Morris*, 911 F.2d 527, 535 (11th Cir. 1990). However, fees incurred prior to the filing of the action in federal court and prior to the beginning of the administrative process were disallowed: "[u]nless there was a pending or prior

faith before the GAO denied it of a fair opportunity for relief at the administrative level, making an award of fees for those proceedings proper. However, unlike the plaintiffs in *Pollgreen*, Maritime did not seek administrative relief on remand from the district court. *See id.* at 534. Additionally, the district court did not find that the Government's bad faith prevented Maritime from seeking relief at the administrative level. Because the EAJA is a waiver of sovereign immunity and as such must be strictly construed, *Haitian Refugee Center v. Meese*, 791 F.2d 1489, 1494 (11th Cir.1986), *vacated in part on other grounds*, 804 F.2d 1573, 1573 (11th Cir. 1986), and because the award of attorneys' fees incurred before the GAO is improper under these facts, we reverse that part of the district court's order that awards fees incurred before commencement of the action in the district court.

E.     Award of Fees Reimbursing Expenses Incurred by Maritime's President

The Government also argues that the portion of the fee award that reimbursed the expenses of Maritime's president was improper because the expenses were purely personal in nature. The Government contends that approximately $8,500 of the fee award are expenses for travel and meals for H. Scott Hilaman, president of Maritime, that were incurred when Mr. Hilaman met with Maritime's attorneys and when he

---

action in federal court relating to the administrative proceedings, we can conceive of no way in which those proceedings could be construed as being intertwined with the (as yet non-existent) civil action for purposes of an EAJA fee award." *Id*. at 536.

22

made inspections related to the dispute. Because there is no statutory provision allowing for these expenses, and because Mr. Hilaman was not acting as an attorney such that he would be eligible to receive reimbursement, *see* 28 U.S.C. §§ 1920, 2412, we reverse that part of the award reimbursing Mr. Hilaman's expenses.

## V.   CONCLUSION

For the foregoing reasons, we vacate the award of fees and remand with instructions to delete from the award an amount corresponding to the sum of the fees incurred during the GAO proceedings and the expenses incurred by Maritime's president.  The award is otherwise affirmed.

AFFIRMED IN PART; VACATED AND REMANDED WITH INSTRUCTIONS.