Slip Op. 10-77

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |
|---|---|
| DELPHI PETROLEUM, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Before: Jane A. Restani, Chief Judge |
| | : |
| UNITED STATES, | : Court No. 06-00245 |
| | : |
| Defendant. | : |

_____

## OPINION

[Plaintiff's motion for attorney's fees is denied.  Plaintiff's motion for costs is granted.]

Dated: July 9, 2010

Delphi Petroleum, Inc. (Ronald Gumbaz) for the plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Todd M. Hughes, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Tara K. Hogan); Richard McManus, Office of Chief Counsel, U.S. Customs and Border Protection, of counsel, for the defendant.

Restani, Chief Judge: This matter is before the court on the application of plaintiff Delphi Petroleum, Inc. ("Delphi") for an award of attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  Delphi sought reliquidation of entries and drawback of Harbor Maintenance Taxes ("HMT") and Merchandise Processing Fees ("MPF") paid on certain imported petroleum products and now applies for the legal fees and costs incurred during the course of its lawsuit against the United States.[1]  The United States contests this application, arguing that its administrative actions and litigation arguments were not in bad

_____

[1] Delphi seeks $34,276.51 for attorney's fees and $350.00 for filing costs.  (Mem. in Supp. of Pl.'s Mot. for Att'ys Fees & Costs ("Pl.'s Mot.") 3.)

faith.  For the reasons stated below, the court denies Delphi's motion for attorney's fees and

grants Delphi's motion for costs.

## BACKGROUND

The facts of this case were well documented in the previous opinion.  See Delphi

Petroleum, Inc. v. United States, 662 F. Supp. 2d 1348 (CIT 2009).  The court presumes

familiarity with that decision, but briefly summarizes the facts relevant to this motion.

Between 1998 and 2002, Delphi filed five drawback entries on certain petroleum

products it imported and then exported as acceptable substitute finished petroleum derivatives

pursuant to 19 U.S.C. § 1313(p).[2]  Delphi, 662 F. Supp. 2d at 1349.  In the context of conflicting

and even prohibitory regulatory and judge-made law and following the advice of Supervisory

Drawback Liquidator Thomas L. Ferramosca, Delphi waited to file its drawback claims for HMT

and MPF in its post-liquidation protest.[3]  Delphi, 662 F. Supp. 2d at 1350 51.  Because Customs

---

[2] In general, Customs will repay fully, less one percent, the amount of duties paid upon goods previously imported into the United States and used in the manufacture or production of "commercially interchangeable" merchandise that is subsequently exported or destroyed.  19 U.S.C. § 1313(j).  A claimant has three years from the date of exportation or destruction of the merchandise to file a drawback claim.  Id. § 1313(r)(1).

[3] When Delphi filed the claims at issue, Customs' regulations expressly prohibited HMT and MPF drawback.  See 19 C.F.R. § 191.3(b)(1) (2) (2002).  Before 2004, the drawback statute stated that the "duty, tax, or fee imposed . . . because of its importation . . . shall be refunded as drawback."  19 U.S.C. § 1313(j) (2000).  In 1999, the Federal Circuit held that MPF was eligible for drawback, as it was imposed because of importation.  Texport Oil Co. v. United States, 185 F.3d 1291, 1296 (Fed. Cir. 1999).  HMT was found not eligible for drawback, however, because it was a general charge "against all shipments, regardless of whether they [were] imports."  Id. While by late 1999 the law on MPF seemed to be settled, regulations did not change and confusion continued at Customs for some years.  See HQ 231068 (Aug. 30, 2005), available at 2005 WL 3086998.  Thereafter, Congress passed the Miscellaneous Trade and Technical Corrections Act of 2004, which clarified that MPF and HMT were eligible for drawback claims.
(continued...)

delayed liquidation of Delphi's drawback claims between August 1997 and June 2002, several of Delphi's HMT and MPF drawback claims made "by protest" were precluded by the statutory three-year time limitation from the date of export for filing drawback claims. Id. at 1350 51 & n.4. In January 2006, Customs denied Delphi's protest with respect to the HMT and MPF drawback requests for entries before June 12, 2000. Id. at 1351. Delphi challenged that decision here in July 2006, and the court held that Delphi's delayed drawback claims filing was allowed under the time extension permitted by 19 U.S.C. § 1313(r)(1) because Customs was "responsible" for Delphi's delayed filing. Id. at 1355. Delphi now seeks attorney's fees and costs pursuant to § 2412(a)-(b) of EAJA.

## DISCUSSION

Pursuant to United States Court of International Trade ("USCIT") Rule 54.1, "[t]he court may award attorney's fees and expenses where authorized by law." USCIT R. 54.1(a). Although the United States is generally immune from suit, EAJA waives the United States' sovereign immunity for purposes of allowing a prevailing party to recover attorney's fees and expenses under certain circumstances. See 28 U.S.C. § 2412. Delphi seeks attorney's fees pursuant to 28 U.S.C. § 2412(b), which allows fee-shifting against the United States "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."[4] Id. § 2412(b). Under the common law

---

[3](...continued)
See Pub. L. No. 108-429, § 1557, 118 Stat. 2434, 2579 (2004); Aectra Ref. & Mktg., Inc. v. United States, 565 F.3d 1364, 1369 70 (Fed. Cir. 2009).

[4] The court notes that Delphi does not seek an award of attorney's fees under the more
(continued...)

"American Rule," the prevailing party may not collect attorney's fees from the losing party.

Centex Corp. v. United States, 486 F.3d 1369, 1371 (Fed. Cir. 2007).  In certain rare

circumstances, however, an exception to this rule applies when a party opponent is found to have

"acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Chambers v. NASCO,

Inc., 501 U.S. 32, 45  46 (1991) (internal quotation marks and citations omitted); see also

Amsted Indus. Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 378 (Fed. Cir. 1994).  Bad faith

is a high standard that warrants fee-shifting when a court finds "that fraud has been practiced

upon it, or that the very temple of justice has been defiled."  Universal Oil Prods. Co. v. Root

Ref. Co., 328 U.S. 575, 580 (1946).

In the underlying dispute, Delphi prevailed in its argument that the three-year

time limit for filing its drawback claims should have been extended under the final clause of 19

U.S.C. § 1313(r)(1), which states that "[n]o extension will be granted unless it is established that

the Customs Service was responsible for the untimely filing." 19 U.S.C. § 1313(r)(1).  In this

application, Delphi's assertion of Customs' bad faith is threefold.  First, Delphi asserts that the

very failure of Customs to extend the statutory time limit for filing its drawback claims was in

bad faith.  (Pl.'s Mot. 2.)  Second, Customs allegedly acted in bad faith when it refused to admit

that it had "suspended" the liquidation of Delphi's drawback claims and refused to settle the

---

[4](...continued)
common EAJA provision, 28 U.S.C. § 2412(d)(1)(A), which provides for fee-shifting when
certain requirements are met "unless the court finds that the position of the United States was
substantially justified."  28 U.S.C. § 2412(d)(1)(A).

claim, which Delphi asserts gave rise to an otherwise avoidable lawsuit.[5]  (See Pl.'s Mot. 5 6, 10, 16 .)  And third, Customs allegedly acted in bad faith when it gave conflicting answers to Delphi's interrogatories asking why it delayed liquidation of Delphi's drawback claims.  (See Pl.'s Mot. 10 13.)  Delphi's first two assertions are addressed together.

**A.       Customs' Refusal to Process Delphi's Drawback Claims**

The Federal Circuit has "taken the position that fee awards cannot be assessed based on claims of bad faith primary conduct."  Centex Corp., 486 F.3d at 1372.  Primary conduct is that which "precedes the accrual of the claim in question" and is "related to the plaintiff's substantive claim."  Id. at 1371 72, 1375.  The Federal Circuit acknowledged, however, "that there is some case law support for the proposition that the judicial process is abused by a defendant's bad faith response to a claim for relief after the claim accrues but before the judicial process is formally invoked."[6]  Id. at 1372 n.1.  Those courts that have found bad faith "primary conduct" that warranted fee-shifting emphasized that the plaintiff was forced to litigate and defend a clear right.  See Vaughan v. Atkinson, 369 U.S. 527, 531 (1962) (noting that plaintiff was "forced to hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old"); see also Mar. Mgmt., Inc. v. United States, 242 F.3d 1326,

_____

[5] According to Delphi, Customs' actions "caused [Delphi's] untimely filing, forced Delphi to incur the legal expenses," and "[b]ut for Custom[s'] bad faith and wanton disregard of its responsibilities, Delphi's claims would have been paid in full without litigation."  (Pl.'s Mot. 13.)

[6] The Federal Circuit did not decide the exact parameters of eligibility for fees, but rejected fees based on bad faith conduct that precedes the accrual of the claim.  See id. at 1375. We need not explore the issue further, however, because Customs' alleged bad faith pre-litigation conduct does not warrant fee-shifting in this case.

1335 (11th Cir. 2001) (per curiam); Am. Hosp. Ass'n v. Sullivan, 938 F.2d 216, 220 (D.C. Cir. 1991).

Although Delphi would have been entitled to drawback of its HMT and MPF if its claims were timely filed, Delphi was not clearly entitled to a 19 U.S.C. § 1313(r)(1) statutory extension of the time to file. Thus, Customs did not act in bad faith when it refused to process Delphi's delayed claims. At the time Delphi pressed its claim, Customs had not promulgated any regulations to implement the extension provision, nor were the parties in the underlying case able to cite to any instance in which Customs had granted an extension under the statutory provision. Delphi, 662 F. Supp. 2d at 1354. Furthermore, no court had defined what conduct would make Customs "responsible" for a delay in filing so as to warrant an extension. Accordingly, this is not a case where Delphi was "forced to hire a lawyer and go to court to get what was plainly owed [it] under laws that are centuries old." Vaughan, 369 U.S. at 531.

Next, government officials are presumed to have acted in good faith, Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004); Allegheny Bradford Corp. v. United States, 350 F. Supp. 2d 1332, 1338 (CIT 2004), and Delphi has not met its burden by showing that Customs' pre-litigation conduct was so irregular as to amount to bad faith. Customs indicated that the delay in processing Delphi's drawback claims was due to "destruction of documents that were housed in the World Trade Center in 2001" (Pl.'s Mot. Ex. 17, at 12), and that Delphi's delayed claims were "selected for review; therefore, liquidation could not occur until Delphi satisfied the request for information" (Pl.'s Mot. Ex. 18, at 3). The court also notes the general state of confusion during the relevant time period as to the eligibility of MPF and HMT for drawback the law was in a state of flux, see supra note 2, and Customs

did not liquidate § 1313(p) claims between August 1997 and June 2002 "to address issues raised by the trade community," Delphi, 662 F. Supp. 2d at 1351 n.4 (internal quotation marks and citation omitted).  Delphi does not provide any evidence demonstrating that Customs acted in bad faith when it did not process Delphi's claims promptly and delayed liquidation.  Thus, bad faith on the part of the Government has not been demonstrated in connection with either the processing of the administrative claims or the Government's defense of this action.

**B.      Alleged Bad Faith Discovery Responses**

Delphi also asserts that Customs acted in bad faith when it allegedly gave contradictory responses to interrogatories asking why Customs delayed liquidation of Delphi's drawback claims.[7]  As indicated, § 2412(b) allows for a party to recover attorney's fees "to the same extent that any other party would be liable . . . under the terms of any statute which provides for such an award."  28 U.S.C. § 2412(b).  The Federal Circuit held that this provision includes Federal Rule of Civil Procedure 37, which gives a court the "authority to award sanctions against a party for failing to cooperate during the discovery process."  M.A. Mortenson Co. v. United States, 996 F.2d 1177, 1181 (Fed. Cir. 1993).  USCIT Rule 37, which mirrors the federal rules, permits the Court to award attorney's fees and expenses when a party fails to correct a response to an interrogatory "if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  USCIT R. 26(e)(1)(A) (emphasis added); see

---

[7] One interrogatory answered by the Government stated that the delay was due to the destruction of documents in the World Trade Center in 2001.  (Pl.'s Mot. Ex. 17, at 12.)  Another interrogatory response denied that liquidation was suspended.  (Pl.'s Mot. Ex. 18, at 5.)  Customs submitted a document during discovery, however, that indicated that Customs had suspended liquidation.  (Pl.'s Mot. Ex. 19.)  The problem may have been semantic.  What is meant by "suspension" and what is a "hold" or informal delay is unclear.

USCIT R. 37(c)(1)(A).  Of course, the Court can also award attorney's fees and expenses when it grants a motion for an order compelling disclosure.  USCIT R. 37(a).  No such motion was filed.

Customs' somewhat inconsistent responses to Delphi's interrogatories do not warrant awarding attorney's fees under either aspect of the rule.  Customs likely was not under an obligation to clarify interrogatory answers because the issue of whether Customs had "suspended" liquidation, and the reason therefor, was not material.  It was undisputed that there was an uncustomary delay in liquidation.  Delphi delayed filing its drawback claims for HMT and MPF because it was told to wait until the time for protesting liquidation to do so.  Why liquidation was delayed is irrelevant.  Further, as explained in footnote seven, the court sees in the interrogatory answers confusion or, at most, lack of attention to immaterial matters, as opposed to an attempt to obstruct.  Accordingly, Delphi's motion for attorney's fees is denied. Delphi's motion for filing costs is granted pursuant to 28 U.S.C. § 2412(a) and USCIT R. 54(d)(1).

    /s/ Jane A. Restani        

Jane A. Restani

Chief Judge

Dated: This 9th day of July, 2010.
     New York, New York.